11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Lawrence James Napper 

            Appellant

Vs.      
            Nos. 11-02-00017-CR
& 11-02-00018-CR - Appeals from Harris County

State of Texas

Appellee

 

The jury
convicted appellant of the aggravated sexual assault and aggravated kidnapping
of a child.  His punishment was assessed
at imprisonment for life under the mandate of TEX. PENAL CODE ANN. ' 12.42(c)(2) (Vernon Supp. 2003) based upon
the jury=s determination that appellant had previously
been convicted of similar offenses.  In
his sole appellate issue, appellant alleges ineffective assistance of trial
counsel during the guilt/innocence phase. 
We affirm.  

E.T., a
six-year-old boy, testified that a man forced him to get inside a car on
February 11, 2001, at a location near the boy=s home.  The only witnesses to
the kidnapping were other children who were E.T.=s siblings and neighborhood friends. 
The man sped away from the scene with E.T. The other children remained
in the area where the kidnapping occurred for an undetermined  period of time to see if the man would
return E.T. to the area.  They then
reported the kidnapping to their babysitter. 
The babysitter, who was one of the children=s grandmother, initially did not believe
their report of the kidnapping.  Police
officers were subsequently dispatched to the scene at 3:12 p.m.  Authorities were unable to locate E.T. until
the next day.  

The
kidnapper transported E.T. to a house whereupon he tied E.T. to a bed.  E.T. stated that the kidnapper Awet his face@ at some point.  The kidnapper
subsequently returned E.T. to E.T.=s neighborhood the next day. 
Swabs taken of E.T.=s face revealed the presence of semen. 
His face was bruised as a result of the ordeal.  








Appellant
became a suspect as a result of the police receiving a Crime Stoppers= tip on February 23, 2001.  Appellant was on maximum supervision parole
at the time for previous rape convictions. 
Appellant wore an electric monitoring device on the date of the
kidnapping which kept track of the times he remained at home.  This device did not record appellant=s whereabouts while he was away from
home.  The monitoring device indicated
that appellant arrived at his home at 3:07 p.m. on the day of the kidnapping.

While E.T.
did not identify appellant as his kdinapper at trial, police officers testified
that E.T. identified appellant during a video lineup.  E.T. and the other children also identified appellant=s car as the one driven by the
kidnapper.  E.T.=s description of the kidnapper=s house and its contents was consistent with
appellant=s house. 
E.T. told the police that the man put Aorange grease@ on
his body.  The police found a bottle of
orange coconut butter location in appellant=s bedroom.  The State=s DNA expert testified that appellant=s DNA was consistent with the DNA extracted
from the semen found on E.T.=s face.  The expert further
testified that the odds of another individual being the contributor of the
semen to be 1 in 1.3 trillion.  

Appellant
testified in his own behalf at trial. 
He vehemently denied that he kidnapped and sexually assaulted E.T.  Appellant testified that he traveled to his
cousin=s grandmother=s house on the day of the kidnapping in order for his cousin to work on
appellant=s car=s stereo system.  His cousin=s grandmother=s house was located near the area where the kidnapping occurred.  He stated that he arrived at his cousin=s grandmother=s house sometime around 10:30 a.m., that he left at approximately 2:30
p.m., and that he returned directly to his home by 3:07 p.m.  








Appellant
presented his ineffective assistance claim to the trial court in a motion for
new trial.  The trial court overruled
appellant=s complaint by denying the motion for new
trial.  The only evidence offered at the
hearing on the motion for new trial were affidavits received into evidence by
the trial court.  See TEX.R.APP.P.
21.7.  Appellant=s evidence consisted of affidavits prepared
by a DNA expert, of the testimony of one of appellant=s parole officers, and of appellant=s unsworn declaration submitted under the
provisions of TEX. CIV. PRAC. & REM. CODE ANN. ' 132.001 et seq.  (Vernon 1997 & Supp. 2003). 
The DNA expert=s
affidavit criticized the manner in which trial counsel handled the State=s presentation of the DNA evidence at
trial.  The parole officer=s affidavit asserted that trial counsel
failed to elicit testimony from him which might have established an alibi for
appellant.  Appellant=s declaration expressed his general
dissatisfaction with trial counsel.[1]  The State offered an affidavit from
appellant=s trial counsel which responded to appellant=s charges. 


To prevail
on a claim of ineffective assistance of counsel, an appellant must establish
that his counsel’s performance fell below an objective standard of
reasonableness and that there is a “reasonable probability” the result of the
proceeding would have been different but for counsel’s deficient
performance.  Strickland v. Washington,
466 U.S. 668, 693-94 (1984); see Mallett v. State, 65 S.W.3d 59, 62-63
(Tex.Cr.App.2001).  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Hernandez v. State, 726 S.W.2d
53, 55 (Tex.Cr.App.1986).  The purpose
of this two-prong test is to judge whether counsel's conduct so compromised the
proper functioning of the adversarial process that the trial cannot be said to
have produced a reliable result.  Thompson
v. State, 9 S.W.3d 808, 812-13 (Tex.Cr.App.1999), citing McFarland v. State,
845 S.W.2d 824, 843 (Tex.Cr.App.1992), cert. den’d, 508 U.S. 963 (1993).

The review
of defense counsel=s
representation is highly deferential and presumes that counsel=s actions fell within a wide range of
reasonable professional assistance. 
Tong v. State, 25 S.W.3d 707, 712 (Tex.Cr.App.2000), cert. den=d, 532 U.S. 1053 (2001).  In
order to defeat  Strickland=s presumption of reasonable professional
assistance, Aany allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.@  Thompson v. State, supra at
814, quoting McFarland v. State, 928 S.W.2d 482, 500 (Tex.Cr.App.1996), cert.
den=d, 519 U.S. 1119 (1997).  We do
not review the Strickland standards in a de novo fashion; we review them
through the prism of an abuse of discretion standard to determine whether the
trial court=s decision to deny the motion for new trial
was so outside the zone of reasonable disagreement that it is subject to
reversal.  State v. Gill, 967 S.W.2d
540, 542 (Tex.App. B
Austin 1998, pet=n ref=d).             Appellant attacks various instances of trial counsel=s performance in his brief.  The first matter involves an allegation that
trial counsel failed to elicit testimony from appellant=s parole officers regarding the fact that the
electric monitoring system indicated that he had returned home at 3:07 p.m. on
the day of the kidnapping.  Trial
counsel=s affidavit stated as follows regarding his
views pertaining to the time appellant returned home:

I did not
spend a significant amount of time surrounding [appellant=s] arrival at his home on the date of the
offense.  This was done because it would
not eliminate [appellant] as being capable of committing the offenses
alleged.  The record was clear that
[appellant] was in an area not too far from the kidnapping.  The record was also clear that there were
several intervening circumstances that took place prior to the kids eventually
telling [the babysitter], who then called the police.  This would have allowed [appellant] to have more than enough time
to travel from the kidnapping scene to his residence. 

 

The record
does not demonstrate within a reasonable degree of probability that the result
would have been different had this testimony been offered through the parole
officers.  This evidence came before the
jury through other witnesses, primarily through appellant=s testimony. 
The State did not dispute appellant=s testimony as evidenced by the following dialogue between the
prosecutor and appellant during cross-examination:

Q:        Do you remember getting
home at 3:07, according to your monitor?

 

A:         Yes.

 

Q:        But in between 10:03 and
3:07 you know you can=t be
tracked; is that correct?

 

A:         Say that again.

 

Q:        You know that in between
10:03 and 3:07 your whereabouts cannot be tracked; correct?

 

A:         Well, I know at 3:10
the child was picked up and I was home at 3:07, so I couldn=t have been there to pick up that child.  

 








Contrary
to appellant=s above-quoted response, the record does not
establish that the kidnapping occurred at 3:10 p.m.  The record establishes that the police received a report of the
kidnapping at 3:12 p.m.  The testimony
of the other children indicated that the kidnapping had occurred sometime prior
to the report to the police.  The
children first waited around the area where the kidnapping occurred to see if
the kidnapper would bring E.T. back before reporting the incident.  The report to the police was further delayed
by the babysitter=s
initial reluctance to believe their report. 
As a result of the delay between the kidnapping and the report to the
police, the evidence of appellant=s arrival at his house at 3:07 p.m. does not necessarily exclude him
from being the kidnapper.  

Appellant
additionally complains that trial counsel elicited damaging testimony from his
parole officers concerning his prior convictions and details of his previous
level of surveillance while on parole. 
The record establishes that trial counsel called the parole officers to
testify at appellant=s
insistence.  Trial counsel stated on the
record during a discussion which occurred outside of the presence of the jury
that he had advised appellant against calling the parole officers as witnesses
in order to avoid the introduction of evidence that appellant was on parole for
more than one previous sexual assault offense.[2]  The trial court made the following statement
to appellant regarding the consequences of the parole officers testifying:  AI want to make sure you understand, Mr. Napper, if those folks get up
on the stand to testify clearly the jury is going to know you=re on parole.  And I can B they are entitled to know what you=re on parole for.@ 








Trial
counsel questioned the parole officers about appellant=s prior convictions during his direct
examination of them.  Trial counsel also
questioned the parole officers about the details of the surveillance which they
had maintained on appellant.  The parole
officers testified that, prior to the kidnapping, appellant had been monitored
by an electronic tracking device which recorded his whereabouts at all times.  Prosecutors developed testimony during
cross-examination of the parole officers that very few parolees are monitored
by these tracking devices.  Appellant
contends that trial counsel should not have questioned the parole officers
about his prior convictions.  He further
contends that trial counsel should have sought to exclude this testimony from
being offered through the parole officers by asserting an objection under
TEX.R.EVID. 403 based upon unfair prejudice.[3]  Appellant also complains that trial counsel=s questions regarding the tracking device
permitted prosecutors to develop testimony showing that appellant was
considered to be a dangerous parolee. 
Appellant additionally asserts that trial counsel should have asked the
trial court to give limiting instructions whenever the evidence of his prior
convictions and previous level of surveillance was admitted.  Trial counsel stated in his affidavit that
he did not request limiting instructions in order to minimize the jury=s attention to these matters.

Our review
of the record does not indicate that trial counsel=s questioning of the parole officers
regarding appellant=s
prior convictions and the details of his parole fell below an objective level
of reasonable performance.  As noted
above, the trial court had previously informed appellant and trial counsel that
it would permit the admission of evidence of appellant=s prior convictions if the parole officers
testified.  Trial counsel=s decision to address the unfavorable facts
concerning appellant=s
parole during the direct examination of the parole officers was not
unreasonable because these facts most likely would have been addressed by the
prosecutors during cross-examination. 
Furthermore, trial counsel did not want to call the parole officers as
witnesses as a part of his trial strategy. 
He only called them as witnesses at appellant=s insistence after appellant had been warned
of the adverse consequences of which appellant now complains on appeal.  When a defendant preempts his attorney=s strategy by insisting that a different defense
be followed, no claim of ineffectiveness can be made.  See Duncan v. State, 717 S.W.2d 345, 348 (Tex.Cr.App.1986).  The record further does not conclusively
establish that the trial court would have sustained a Rule 403 objection to
these matters as the trial court exercises broad discretion in applying the
rule.  See Moreno v. State, 22 S.W.3d
482, 487 (Tex.Cr.App.1999); Montgomery v. State, 810 S.W.2d 372, 389
(Tex.Cr.App.1991).  With respect to
trial counsel=s decision to not request limiting instructions,
courts have recognized that counsel=s desire to not remind the jury of adverse matters is a reasonable
trial tactic.  See Ali v. State, 26
S.W.3d 82, 87 (Tex.App. B Waco 2000, no pet=n).  








The
remainder of appellant=s
ineffective assistance claim attacks trial counsel=s handling 
of the State=s DNA
evidence. The State presented its DNA evidence through the testimony of Mary
Childs-Henry and Joseph Chu. 
Childs-Henry, a forensic biologist/serologist with the Houston Police
Department Crime Laboratory, identified the swabs from E.T.=s face as containing semen. Childs-Henry was
able to extract a sufficient amount of DNA from the facial swabs for comparison
purposes.  Chu, a DNA analyst with the
Houston Police Department Crime Laboratory, determined that the DNA extracted
from the facial swabs was consistent with appellant=s DNA sample. 

Trial
counsel obtained authorization from the trial court to retain a DNA expert at
the State=s expense. 
However, trial counsel ultimately did not retain a DNA expert.  Trial counsel stated in his affidavit that
one of the prosecutors advised him that no DNA sample remained from the swab of
E.T.=s cheek to be tested by the defense.  Trial counsel decided not to retain a DNA
expert because of the lack of a sample for independent testing.  Trial counsel stated as follows in this
regard: 

I felt that it was not in [appellant=s] best interest to utilize an expert to
conduct an independent analysis of the procedures used by the State.  I reached this conclusion because I was of
the opinion that, as trial strategy, I could effectively argue the unfairness
of no sample being available for the defense to analyze.  I also believed that if there were some
issues with regard to methodologies and procedures, I could get more mileage
out of this on cross examination.  The
distinct possibility that our expert would confirm the propriety of the State=s methodologies and procedures during the
laboratory testing, thereby reinforcing the validity of the d.n.a. results, was
also a concern that I had.

 

Appellant=s contention with regard to the DNA evidence
is based on the affidavit of Dr. Elizabeth A. Johnson, a DNA expert from
California.[4]  Dr. Johnson=s affidavit asserts numerous deficiencies with respect to trial counsel=s handling of the DNA evidence.  She contends that the testimony of
Childs-Henry and Chu was weak and poorly cross-examined.  Dr. Johnson asserted that she has reviewed
numerous other cases involving analyses performed by Childs-Henry and Chu and
that she has detected serious errors in their work in most of these other
cases.  She concluded her affidavit by
stating as follows: 

In conclusion, the testing and analysis of
the [Houston Police Department] lab in this case is potentially seriously
flawed, and may contain errors that could have resulted incorrect conclusions
(sic) that were reported and testified to in trial.  The lack of adequate cross-examination of the scientific
witnesses by defense counsel does not allow the jury to have an understanding
of these potential flaws or bias on the part of the [Houston Police Department]
lab staff. 

 








While Dr.
Johnson=s affidavit criticizes trial counsel=s performance, it does not allege any actual
errors in Childs-Henry=s and
Chu=s work which trial counsel failed to discover
or develop.  She instead only cites
potential errors in their analyses which may have occurred.  The record, therefore, does not show within
a reasonable degree of probability that the results of the proceeding would
have been different but for trial counsel=s allegedly deficient performance. 
Moreover, the record does not affirmatively establish that trial counsel=s performance fell below an objective
standard of reasonableness with respect to the DNA evidence.  Trial counsel strenuously cross-examined the
police officers who obtained the facial swabs from E.T. in an effort to suggest
that the manner in which the swabs were handled did not prevent them from being
contaminated.  He also emphasized the
lack of a remaining sample for appellant to test independently.  

In
summary, the record does not establish that trial counsel=s performance fell below an objective
standard of reasonableness. 
Furthermore, the evidence of appellant=s guilt was ample.  The  record does not demonstrate within a
reasonable degree of probability that the result of the proceedings would have
been different irrespective of the matters asserted by appellant.  Appellant=s sole appellate issue is overruled. 


The
judgments of the trial court are affirmed. 


 

PER
CURIAM

 

December 19, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.                                                         











     [1]The reporter=s
record indicated that appellant made repeated 
outbursts during the proceedings which expressed his disagreement with
trial counsel and the proceedings in general. 
Appellant had to be removed from the courtroom on at least one occasion
as a result of these outbursts.  





     [2]This discussion outside of the jury=s presence also addressed trial counsel=s recommendation to appellant not to testify in order
to prevent the jury from learning about his prior convictions.  Appellant stated in the declaration attached
to his motion for new trial that the only reason he testified at trial was due
to trial counsel=s failure to obtain the arrival time testimony from the
parole officers.  However, the record
reflects that appellant intended to testify before the parole officers ever
took the stand.





     [3]Rule 403 provides:

 

Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.





     [4]Dr. Johnson stated in her affidavit that she
established the DNA analysis laboratory within the Harris County Medical
Examiner=s Office.