Affirmed and Memorandum Opinion
filed April 14, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00881-CR



Arthur Lee
Alexander, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 177th District Court

Harris County, Texas

Trial Court
Cause No. 1198020



 

MEMORANDUM OPINION

A jury convicted appellant Arthur Lee Alexander of aggravated
assault of a family member, and the trial court sentenced appellant to seventy-five
years’ imprisonment.  See Tex.
Penal Code Ann. § 22.02(b)(1) (West Supp. 2009).  In a single issue,
appellant argues that his trial counsel rendered ineffective assistance.  We
affirm.

Background

Appellant was in a dating relationship with Bree
Nelms for about five years.  Late one night in January 2009, Nelms was awakened
by her son after he heard knocking at the front door.  Nelms opened the door
and found appellant.  After an argument, appellant pointed a pistol at Nelms’s
face and said, “Bitch, if I can’t have you, nobody can.”  Appellant then shot
Nelms in the face, torso, and arm.

Nelms survived the shooting and testified at trial. 
Immediately before appellant’s counsel was to begin his cross examination of
Nelms, he approached the bench and advised the court that appellant had given
him “a list of questions that he wants asked exactly like he has them.” 
Appellant’s counsel expressed concern that the questions involved “some very
dangerous areas.”  The court instructed appellant’s counsel that he was not
required to follow appellant’s instructions,[1]
and the court recessed so counsel could advise appellant.  When proceedings
resumed outside the presence of the jury, appellant requested and received
permission to make the following statement to the court:

I’m telling my counsel that I
need him to ask certain questions.  He steadily telling me what questions he’s
going to talk.  I don’t need you to do what you are going to do.  I need you to
do what I ask you to do.  Other than that, you ain’t helping me.  You ain’t fit
counsel.  I need to do what I asked you to do, not what you want to do.

My life’s on the line right
here.  He’s steadily telling me about what she’s saying on the stand.  That
ain’t helping me.  I need you to ask these questions which are going to prove
she’s lying.  You want to ask what you want to ask.  I don’t want you to ask
what you want to ask.  I want you to ask what I got wrote down right here. 
That’s what I need you to ask.  Anything else is irrelevant.

I’m saying what he’s talking
about.  Because you-all don’t know what he’s over there telling me.  He’s over
there talking to me like I’m a two-year-old, like I ain’t got common sense. 
I’m steadily telling him that she’s lying about what she said, that we wasn’t
together.  And I’m telling him that we was together the first day I got out and
I can prove it by—because she rented the room.  I was at her house and
everything else.  He’s steadily telling me he ain’t going to ask these
questions.  I need you to ask these questions because it’s going to prove that
she’s lying.

The
court asked appellant if these questions would prove that Nelms was lying about
appellant shooting her.  Appellant answered,

Yes, sir.  It’s proving that she’s a proven liar.  He’s
steadily saying that these questions that I’m asking is going to open up
everything that happened between the relationship.  That’s what I want,
everything that happened to come out because it’s going to prove that she’s
lied and lied and lied again on me.  That’s exactly what I want.  That’s
exactly why I want these questions asked.

Following
this statement, the court inquired of appellant’s legal training and suggested appellant
was a “fool” for not following the advice of counsel.  After appellant told the
court that a prior charge against him for assault of a family member was
dismissed, the following exchange took place:

The Court:     Do
you want to open that door?

Appellant:     I
don’t have no choice.  I have to.  I don’t have no choice.  My life’s on the
line.

The Court:     All
right.  Do you understand if you open the door to your prior criminal history,
you’re opening the door—you may kick that thing wide open, including assault on
a peace officer, pen time for another assault?  Any violent act you’ve ever
committed, whether—whether you were arrested for, convicted of, any violent
act, you may open the door to that.  Do you understand that?

Appellant:     Yes,
sir.

The Court:     Do
you want the jury to hear about every time you got violent with somebody?  I’m
asking you a legitimate question.  Do you want the jury to hear that?

Appellant:     If
I don’t—

The Court:     You’re
about to kick the door wide open.

Appellant:     But
if I don’t, then they’re only going to hear what she’s saying and then I ain’t—I
sure enough ain’t got no win then.  I sure enough ain’t got no win.

. . . .

The Court:     .
. . I want it on the record that you, in fact, are requesting him—not only
requesting him, but demanding that he ask these open-ended questions that you
don’t know the answers so that when it opens up this can of worms, you can’t
come back on a writ and say, “He was ineffective because he opened up this can
of worms that buried me.”

Then,
appellant’s counsel asked appellant to state, on the record, that even though
the eleven questions at issue could open up matters that counsel did not know
the answers to and could open doors to inadmissible evidence, appellant was
demanding counsel ask all or some of the questions.  Appellant responded, “I’m going
to take my chance with the questions.  I’m going to take my chance.”  The court
asked appellant, “So, are you demanding that your lawyer, Mr. Hayes, ask all 11
questions?”  Appellant responded, “Yes.  Yes.  Yes, sir.”

After
once again explaining the consequences of the course of action appellant was insisting
upon, the court asked, “So, you are saying you are not going to follow the
advice of your counsel and demand of him to go into the questions—and actually
not go into, but specifically ask these specific questions you have written
down for him during the complaining witness’ direct examination?”  Appellant
responded, “Yes, sir.”

Finally,
the court explained to appellant that he would be waiving error on a writ based
upon those eleven questions: “[A]re you waiving any collateral attack based on
these 11 questions?”  Appellant responded, “Yeah, based on them 11 questions. 
Yes, sir.”

Appellant’s counsel asked Nelms the questions during
cross examination, thereby eliciting information concerning appellant’s
criminal history and prior bad acts.  The State conducted a redirect
examination, eliciting further detail on the matters raised during cross. 
Appellant’s counsel did not object to those matters.

Ineffective Assistance of
Counsel

            In
a single issue, appellant claims his trial counsel was ineffective during the
guilt/innocence phase by (1) eliciting testimony regarding otherwise
inadmissible prior felony convictions and extraneous bad acts during cross examination
of the complainant and (2) failing to object to the prosecutor’s redirect examination
on those subjects.

            To
prevail on an ineffective assistance claim, an appellant must show that (1)
counsel’s performance was deficient by falling below an objective standard of
reasonableness and (2) counsel’s deficiency caused the appellant prejudice—that
counsel’s errors were so serious as to deprive the appellant of a fair trial, and
there is a probability sufficient to undermine confidence in the outcome that but
for counsel’s errors, the result of the proceeding would have been different.  Strickland
v. Washington, 466 U.S. 668, 687–88, 694 (1984); Perez v. State, 310
S.W.3d 892, 892–93 (Tex. Crim. App. 2010).  An appellant must satisfy both
prongs by a preponderance of the evidence; failure to demonstrate either
deficient performance or prejudice will defeat a claim of ineffectiveness.  Perez,
310 S.W.3d at 893.

Here,
appellant cannot satisfy the first prong of the Strickland test.  If a
defendant, upon full advice of the consequences, demands that counsel follow a
flawed strategy, a subsequent claim of ineffective assistance will not lie.  McFarland
v. State, 845 S.W.2d 824, 848 (Tex. Crim. App. 1992) (“When a defendant
preempts his attorney’s strategy by insisting that . . . certain evidence be
put on or kept out, no claim of ineffectiveness can be sustained.”), overruled
on other grounds by Bingham v. State, 915 S.W.2d 9 (Tex. Crim. App. 1994); see
Porter v. State, No. 74095, 2003 WL 1845082, at *4 (Tex. Crim. App. Apr. 9,
2003) (not designated for publication) (holding counsel’s performance not
deficient when the client insisted on not striking a juror who favored the
death penalty because “counsel advised their client of their professional
position, advised the court of the situation, preserved the record, and did not
breach the Rules of Professional Conduct”); Duncan v. State, 717 S. W.
2d 345, 348 (Tex. Crim. App. 1986) (“[W]hen a defendant preempts his attorney’s
strategy by insisting that a different defense be followed, no claim of
ineffectiveness can be made.”); see also United States v. Masat,
896 F.2d 88, 92 (5th Cir. 1990) (“Cutting through the smoke, it is apparent
that we are being asked to permit a defendant to avoid conviction on the ground
that his lawyer did exactly what he asked him to do.  That argument answers
itself.”), quoted in McFarland, 845 S.W.2d at 848.

In
part, this is because the “reasonableness of counsel’s actions may be
determined or substantially influenced by the defendant’s own statements or
actions.  Counsel’s actions are usually based, quite properly, on informed
strategic choices made by the defendant and on information supplied by the
defendant.”  Strickland, 466 U.S. at 691, quoted in McFarland,
845 S.W.2d at 848.  

In
this case, counsel’s performance was not deficient.  Counsel and the court
repeatedly implored appellant not to follow a potentially disastrous course of
action, but appellant could not be dissuaded.  Appellant demonstrated his
desire to pursue his own course in the trial and his knowledge of the
ramifications.  Appellant acknowledged the risks of asking these questions and
made a strategic decision.  He explained, “That’s what I want, everything that
happened to come out because it’s going to prove that [Nelms] lied and lied and
lied again on me.  That’s exactly what I want.  That’s exactly why I want these
questions asked.”

Further,
we note that the Texas Disciplinary Rules of Professional Conduct provide that
an attorney must “abide by a client’s decisions” unless the course of action
would be criminal, fraudulent, or otherwise prohibited by the rules or law.  See
Tex. Disciplinary Rules Prof’l
Conduct R. 1.02, reprinted in Tex.
Gov’t Code Ann., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar
R. art. X, § 9).  Appellant does not argue on appeal that the questions he
demanded to be asked constituted a criminal, fraudulent, or otherwise
prohibited act.  Thus,
counsel’s legal assistance to appellant did not fall below an objective
standard of reasonableness when he asked the questions as directed.  See
McFarland, 845 S.W.2d at 848; Porter, 2003 WL 1845082, at *4.[2]

Additionally,
appellant’s counsel did not render deficient performance by his failure to
object to the State’s questions on redirect examination after counsel opened
the door during cross examination.  Even if the redirect examination revealed
otherwise inadmissible testimony, a defendant’s questioning can open the door
to its admission.  See Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim.
App. 1996).  And counsel’s failure to object to admissible evidence cannot be
considered deficient performance.  McFarland, 845 S.W.2d at 846; see
Gosch v. State, 829 S.W.2d 775, 784 (Tex. Crim. App. 1991).

Accordingly,
appellant has failed to satisfy the first prong of the Strickland test,
and we need not determine whether he was prejudiced.  See My Thi Tieu v.
State, 299 S.W.3d 216, 225 (Tex. App.—Houston [14th Dist.] 2009, pet.
ref’d) (citing Strickland, 465 U.S. at 697).[3]

We
overrule appellant’s sole issue and affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Sharon
McCally

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Seymore, and McCally.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
The court explained, “The only decisions [appellant] gets to make is whether he
pleads guilty or not guilty, whether he testifies, and who assesses
punishment.  The rest is up to you.  You don’t have to follow—he doesn’t
dictate—I understand your quandary; but if you don’t want to ask the questions,
you don’t have to.”





[2]
Appellant suggests that the decision of how to cross examine a witness is one
belonging to counsel alone, and thus, appellant’s trial counsel should have
ignored appellant’s insistence that particular questions be asked; and the
failure to ignore appellant’s demands constituted deficient performance. 
Perhaps appellant is correct that counsel was not required to ask Nelms
the questions as directed by appellant.  See Phillips v. State,
604 S.W.2d 904, 907 (Tex. Crim. App. [Panel Op.] 1979) (“[W]hen a defendant is
represented by counsel, he does not have the right to propound his own
questions to witnesses . . . .”) (citing Webb v. State, 533 S.W.2d 780,
784 (Tex. Crim. App. 1976)); see also Brookhart v. Janis, 384 U.S. 1, 8
(1966) (Harlan, J., dissenting in part) (“I believe a lawyer may properly make
a tactical determination of how to run a trial even in the face of his client’s
incomprehension or even explicit disapproval.  The decision, for example,
whether or not to cross-examine a specific witness is, I think, very clearly
one for counsel alone.”); Jackson v. State, 766 S.W.2d 504, 508 (Tex.
Crim. App. 1985) (“We have recognized the very practical consideration that the
criminal defense lawyer controls the progress of a case while the client
confronts only three personal decisions: his plea to the charge, whether to be
tried by a jury, and whether to testify on his own behalf.” (emphasis
omitted)), vacated on other grounds by Texas v. Jackson, 475 U.S. 1114
(1986); Landers v. State, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977)
(op. on reh’g) (same); ABA Standards for
Criminal Justice: Prosecution and Defense Function § 4-5.2 (3d ed. 1993)
(listing five decisions that belong to the criminal defendant; explaining that
“[s]trategic and tactical decisions should be made by defense counsel after
consultation with the client,” which includes “whether and how to conduct
cross-examination”); cf. Schindley v. State, 326 S.W.3d 227, 230 (Tex.
App.—Texarkana 2010, pet. ref’d) (op. on reh’g) (concluding that Rule 1.02 does
not require counsel to present particular issues on appeal upon the client’s
request).  

But in its discretion, a trial court may allow for hybrid
representation so that a criminal defendant may actively participate in
decisions involving trial strategy, as the court apparently did here.  See
Phillips, 604 S.W.2d at 907–08.  And although the trial court was not
required to do so, see Clark v. State, 717 S.W.2d 910, 918 (Tex. Crim.
App. 1986), it repeatedly cautioned appellant against his desired course of
action.  Appellant acknowledged the potential dangers and decided to take the
risk; he said, “I’m going to take my chance with the questions.”





[3]
We note, however, that appellant urges this harm analysis only in the most
conclusory manner, urging solely that “it is reasonable to conclude . . .
Appellant’s trial could very well have been different.”