Gary Alan DUNCAN aka Gary Alan Mettey, Appellant,

v.

The STATE of Texas, Appellee.

No. 968–82.

Court of Criminal Appeals of Texas, En Banc.

July 2, 1986.

Anthony F. Constant (court-appointed on appeal), Corpus Christi, for appellant.

Grant Jones, Dist. Atty. and Steve Schiwetz, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty. and Alfred Walker, First Asst., Austin, for State.

Before the court en banc.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant was convicted of the offense of burglary of a habitation. Punishment was

assessed at fifty years' confinement. On direct appeal to the Corpus Christi Court of Appeals, appellant argued that he had received ineffective assistance of counsel at trial. In a published opinion, the Court of Appeals rejected this contention and affirmed appellant's conviction. *Duncan v. State,* 714 S.W.2d 15 (Tex.App.—Corpus Christi 1982).

In two grounds for review, appellant asks us to examine the Court of Appeals' finding that he was accorded effective assistance of counsel. He argues that his trial counsel was ineffective in that he allowed the introduction of an inadmissible oral confession, he allowed the introduction of a long series of inadmissible prior offenses and acts of misconduct including some juvenile offenses, he failed to point out or argue the alibi defense produced by the State's witnesses, and he failed to provide any defense whatsoever. We have reviewed the record in detail and find that appellant's claims are without merit.

On the morning of August 29, 1978, the victim was leaving her motel room in Kingsville around 6:50 a.m. As she left her room, she was grabbed by the appellant, who poked a sharp object into her side and forced her back into her motel room. The appellant then raped the victim and robbed her of approximately $100.00. On the basis of the witness' description, appellant was arrested several hours after the offense.

A review of the trial record indicates that appellant is correct in his assertions that an inadmissible oral confession was admitted into evidence as well as a number of extraneous offenses. Appellant is also correct that counsel failed to develop any kind of alibi defense. However, it is also apparent from the record that this trial strategy was followed against counsel's advice and at the insistence of appellant himself. Appellant did not wish to contest his guilt (although he did plead not guilty). Rather he wished for the jury to think of him as a sexually frustrated young man, suffering from immense emotional problems who had had a life of crime and drug abuse but who

was now asking for a chance for rehabilitation. This strategy included appellant taking the witness stand during the punishment phase of the trial against the advice of counsel, furnishing counsel with a list of questions and areas to delve into upon direct examination, with the end result being appellant himself confessing his guilt to the instant offense and testifying to most of the extraneous offenses about which he now complains. This strategy is clearly pointed out in appellant's own testimony on his motion for new trial.

(Questioning by defense counsel)

"Q. In this case, Mr. Mettey, in your first ground in your motion for new trial, there is alleged that you were denied effective assistance of counsel in that you yourself insisted in bringing out aspects, over my objection, of your past, which were prejudicial to you. Could you describe to us your condition, your reasoning for doing so?

"A. Well, I was confused. The only thing I could think of was I wanted to get up here and tell things like it was. I didn't—I didn't allow anything, I guess, if you said to negative side of taking the stand having effect on me.

"Q. Although you were aware that saying such things might worsen your position? Were you aware—

"A. Not really. Like I said, I wasn't even thinking about that, I didn't let it—

"Q. In fact, you insisted on it?

"A. Taking the stand?

"Q. On taking the stand?

"A. Yes.

"Q. To tell your story, to have your day in Court without regard to the consequences?

"A. Yes, sir.

"Q. Is that true?

"A. Yes.

.    .    .    .    .

"Q. In our conversation prior to trial, you were advised of my negotiation with the State?

"A. Yes.

"Q. And of my recommendation to you?

"A. Yes.

"Q. And you refused that recommendation?

"A. Yes.

"Q. Although it was, and I believe in your own words, probably the best thing to do, you wanted your day in Court?

"A. Yes, sir?

"Q. Why was that? Had you previously been denied appearance or opportunity?

"A. The time in Florida I never had a chance to say anything. They gave me a deal to plead guilty to probation and it turned out otherwise and I just got it in the longrun (sic).

"Q. And, in fact, you insisted on appearing?

"A. Yes.

"Q. And on going to the Jury so that you could express to the Jury the things you wanted to tell them?

"A. Yes.

"Q. And you decided those things yourself—

"A. Yes.

"Q. —what you describe to the Jury?"

On cross-examination, appellant testified as follows:

"Q. Isn't it a fact that, Mr. Mettey, in your considered opinion, you thought it would be best to get up and put your whole life before this Jury, tell them everything, give the Jury the impression that, here, I'm telling you everything, we get it all out in the open, and ask for your mercy, this is what your thinking was, wasn't it?

"A. Yes, sir. I figured about time I started telling people the truth about things, opening up instead of hiding things.

.     .     .     .     .

"Q. So you would feel better about it. This was a personal feeling of yours and you therefore ignored the advice of your attorney and went ahead and did it so you would feel better about

the whole thing, making a clean breast of your whole life, didn't you?

"A. Right.

"Q. Isn't that what it amounts to?

"A. Right.

.     .     .     .     .

"Q. You understood what your attorney was telling you, didn't you?

"A. More or less.

"Q. You knew his advice not to get on the stand but you wanted to tell your story, isn't that right?

"A. Yes."

■ Initially we point out that any complaint appellant may have had as to counsel's failure to object to the admissibility of the oral statements and counsel's failure to develop an alibi defense or any defense for that matter was waived when appellant of his own accord and against the advice of counsel took the stand at the punishment phase of the trial and made a judicial confession to the commission of the offense. *Dugger v. State*, 543 S.W.2d 374 (Tex.Cr. App.1976).

Next we note that in the recent case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated a two-pronged test to determine whether counsel was ineffective in his assistance at trial. Initially, the defendant must show that counsel's performance was deficient, or in other words, that counsel's performance was not reasonably effective. If the first showing is made, the defendant must then show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ingham v. State*, 679 S.W.2d 503 (Tex.Cr.App.1984). Inherent throughout the opinion in *Strickland* is that there is a presumption that counsel rendered reasonable professional assistance.

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.

.     .     .     .     .

**348**

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [citation omitted]" *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065–2066.

■ Important also to the inquiry is the part the defendant played in determining the trial strategy to be pursued:

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. at 2066.

■ Thus, when a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made. *Mitchell v. Kemp,* 762 F.2d 886 (11th Cir.1985); *Autry v. McKaskle,* 727 F.2d 358 (5th Cir.1984); *Foster v. Strickland,* 707 F.2d 1339 (11th Cir.1983), cert. denied 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984). After reviewing this case we are compelled to find that defense counsel was not ineffective. Rather he was attempting to follow the trial strategy thrust upon him by the appellant's choice. Appellant's grounds for review are overruled.

The judgments of the Court of Appeals and the trial court are affirmed.

CLINTON, J., concurs in result

TEAGUE, J., concurs only in the result because he does not believe that the record has been sufficiently developed at this time to make the ultimate decision whether trial counsel was ineffective.

ONION, P.J., not participating.