Arturo Melo MEDINA, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–96–00259–CR—01–96–00261–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 6, 1997.

Discretionary Review Refused April 8, 1998.

Randy McDonald, Houston, for appellant.

John B. Holmes, Alan Curry, Houston, for appellee.

Before SCHNEIDER, C.J., and TAFT and ANDELL, JJ.

## OPINION

TAFT, Justice.

Appellant was charged with three felony murders in separate indictments [1] arising from the same transaction. An enhancement paragraph in each indictment alleged a prior conviction for burglary of a motor vehicle. The offenses were tried together. A jury found appellant guilty and found the allegations in each enhancement paragraph true. The jury assessed appellant's punishment at 65–years confinement and a fine of $10,000 in each case. We address four issues: (1) whether appellant was still in the course of committing unauthorized use of a motor vehicle when he caused the deaths of the victims; (2) whether evidence concerning Houston Police Department's pursuit policy was irrelevant because police pursuit was not a concurrent cause of the victims' death; (3) whether appellant was denied effective assistance of counsel when trial counsel did not question appellant, who insisted on testifying against counsel's advice; and (4) whether the trial court erred in making an affirmative finding of a deadly weapon when the jury made no affirmative finding and the indictment did not allege a deadly weapon per se. We affirm the trial court's judgments, as reformed by deletion of the affirmative findings of a deadly weapon.

## Facts

On the day after Thanksgiving in 1994, Geronimo Perez went to the store and parked his truck in the parking lot, locking the doors and taking his keys with him. When Perez returned, he discovered his truck was gone from the parking lot. Perez reported his truck stolen to the Harris County Sheriff's Department and provided the officers with its description.

Officer Odon Belmarez, III of the Houston Police Department was on patrol when he observed a vehicle run a stop sign. Belmarez pursued the vehicle in order to stop it for the traffic violation. During the pursuit, Belmarez received information that the truck had been stolen from Perez earlier that day. Belmarez noticed that there were two persons inside the vehicle. Despite the fact that Belmarez had turned on his patrol car's emergency lights and continued the pursuit, the driver of the vehicle did not stop.

Before the police pursuit, appellant had picked up Octavio Maldonado, a juvenile. Maldonado realized the truck was stolen when he saw the broken steering column and urged appellant to stop the truck when the police began their pursuit. According to Maldonado, appellant stated he did not want to stop because he did not want to go back to jail. Appellant repeatedly suggested that Maldonado take the blame for stealing the truck because he was a juvenile.

Other patrol cars joined the pursuit of the stolen vehicle as it continued to flee at a high rate of speed, driving through several red lights. At the intersection of Leeland and Scott, Belmarez observed the vehicle enter the intersection on a red light, striking a car carrying Laura Madrid, Lisa Madrid, Maria Victoria Romero, and Robert Romero. Following the impact, the truck driver's door opened, and appellant was thrown into the air. When appellant hit the ground, he got up and began running. Belmarez stopped his patrol car, got out, and started pursuing appellant. Belmarez identified appellant as the driver of the vehicle in open court. Belmarez also observed a second individual exit the vehicle and start running. Officers Flores and Lem apprehended appellant with the help of Officer Eckenrode. Belmarez pursued and apprehended Maldonado.

The car appellant hit had been thrown into a fence near a gas station at the intersection. As a result of the impact, Laura Madrid, Maria Victoria Romero, and Robert Romero were killed. Lisa Madrid remained in a coma for two weeks with severe brain injuries.

## Legal and Factual Insufficiency

In appellant's first six points of error, he claims the evidence is legally and factually

---

1. Trial cause number 9427214, our cause number 01–96–00259–CR, involved victim Laura Madrid. Trial cause number 9427213, our cause number 01–96–00260–CR, involved victim Robert Romero. Trial cause number 9427947, our cause number 01–96–00261–CR, involved victim Maria Victoria Romero.

insufficient to prove that the deaths were caused in the course, and furtherance, of unauthorized use of a motor vehicle. Appellant's argument is that the offense of unauthorized use of a motor vehicle had been completed when appellant, driving the stolen truck, collided with the victims' car so that the evidence was insufficient, as a matter of law, to prove felony murder.

■ A person commits unauthorized use of a motor vehicle if he "intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." TEX. PENAL CODE ANN. § 31.07 (Vernon 1994). Contrary to appellant's position, unauthorized use of a motor vehicle can be a continuing offense. *Gonzales v. State*, 784 S.W.2d 140, 142 (Tex. App.-Austin 1990, no pet.). In *Gonzales*, the defendant stole a vehicle in Travis County. Within a few hours, he was stopped for a traffic violation in Fayette County, at which time he was arrested for unauthorized use of a motor vehicle. The court held there may be unauthorized use of a motor vehicle by a person in the county where the vehicle is originally reported stolen, as well as unauthorized use in another county by the same person. *Id.*

■ In *Mackey v. State*, the defendant's conviction for felony murder was upheld where the defendant left a baby, a passenger in the vehicle, at the side of the road during the commission of theft of a motor vehicle, resulting in the death of the baby. 811 S.W.2d 643, 644–45 (Tex.App.-Waco 1991, pet. ref'd). The court of appeals rejected appellant's claim that the evidence was insufficient because the act of leaving the baby on the side of the road occurred after the felony was complete. *Id.* at 644. Furthermore, viewing the evidence in the light most favorable to the verdict, the court held that any rational trier of fact could have found that the appellant left the baby during the course of, and in furtherance of, his unauthorized use of the vehicle. *Id.* at 645. The court held that leaving the baby furthered appellant's use of the vehicle because he did not have to contend with the baby, whose presence could assist law enforcement in identifying him. *Id.* Similarly, by fleeing from the

police to avoid arrest for the offense, appellant's unauthorized use of the vehicle was furthered.

Under the circumstances of this case, we hold that appellant was continuing to operate the motor vehicle without the owner's consent when he collided with the victims' car. Therefore, we overrule appellant's first six points of error.

### Introduction of Pursuit Policy Evidence

In appellant's seventh point of error, he contends that the trial court committed reversible error by refusing to allow him to introduce evidence concerning Houston Police Department's pursuit policy. He contends this precluded the jury from considering whether the actions of the police contributed to the appellant's actions in causing the collision. The State's objection to the introduction of Houston Police Department's pursuit policy was sustained on the basis of rules 401 and 403 of the Rules of Criminal Evidence.

Relevant evidence means evidence having any tendency to make the existence of any material fact more probable or less probable than it would be without the evidence. TEX. R.CRIM. EVID. 401. The State argues the police pursuit policy is irrelevant because of the law of causation.

■ A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. TEX. PENAL CODE ANN. § 6.04(a) (Vernon 1994). Under section 6.04(a), a concurrent cause excuses a defendant's guilt only when the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant clearly insufficient. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex.Crim.App.1986). Therefore, to have established police conduct as a concurrent cause, appellant had to do more than simply show that the police actions contributed to the result. He had to show that the conduct of the police, whether in violation of

the department's pursuit policy or not, was sufficient to produce the result.

■ Only if the police car had struck the victims' car could police actions have been a sufficient cause of the collision and resulting deaths, and only if police actions could have been a cause of the deaths would the pursuit policy have been relevant. Therefore, the trial court did not err in excluding evidence of the police pursuit policy.

We overrule appellant's seventh point of error.

### Ineffective Assistance of Counsel

In appellant's eighth and ninth points of error, he contends he was denied effective assistance of counsel when his trial counsel refused to participate in his testimony before the jury.

The standard of review for ineffective assistance of counsel claims requires appellant to show (1) his trial attorney's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for his trial attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim. App.1986). The court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.; Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App. 1991). A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from counsel's perspective at the time. *Stafford*, 813 S.W.2d at 506.

■ Also important to the inquiry is the part the defendant played in determining the trial strategy to be pursued. *Duncan v. State*, 717 S.W.2d 345, 348 (Tex.Crim.App. 1986). The reasonableness of counsel's actions may be determined or substantially in-fluenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed, strategic choices made by the defendant and on information supplied by the defendant. *Id.; Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Thus, when a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made. *Duncan*, 717 S.W.2d at 348.

■ The ultimate decision whether to testify belongs to the defendant. *Hubbard v. State*, 770 S.W.2d 31, 43 (Tex.App.-Dallas 1989, pet. ref'd). A defendant who rejects his attorney's advice on this matter, preempts his attorney's strategy, and insists that a different strategy be followed, however, may not complain of ineffective assistance of counsel. *Id.; Duncan*, 717 S.W.2d at 348. The record clearly reflects that appellant chose to testify, despite repeated advice from his trial attorneys and repeated admonishments by the trial court.

Appellant complains that he was totally without counsel during his direct and cross-examination testimony, due to the failure of the defense counsel to assist in directing questions to him, elicit responses, or object to any of the State's cross-examination. The record actually reveals two objections made by defense counsel during cross-examination by the State. While it is true that defense counsel did not question appellant on direct examination, no evidence has been presented to rebut the presumption that counsel was engaging in sound trial strategy, particularly in the face of appellant's preemption of counsel's strategy. *See Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). Furthermore, even if defense counsel had directed questions to appellant during direct examination, appellant fails to establish that the result would have been different, as required by the second prong in *Strickland*. Appellant speculates that the jury would have inferred that even defense counsel did not believe his client, but the record provides no support for this claim.

Appellant makes no separate argument based on the Texas Constitution. According-

ly, we overrule appellant's eighth and ninth points of error.

### Affirmative Finding of a Deadly Weapon

In appellant's tenth point of error, he contends that the trial court committed reversible error in making an affirmative finding of a deadly weapon, when the jury made no affirmative finding and the indictment did not allege a deadly weapon per se.

■ When a jury has determined guilt, the trial court may not properly enter that it has made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon during the commission of the offense unless: (1) the deadly weapon has been specifically pled as such (using the nomenclature "deadly weapon") in the indictment (this rule applies where the verdict reads "guilty as charged in the indictment"); (2) the weapon pled is per se a deadly weapon; or (3) a special issue is submitted and answered affirmatively. *Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985). A guilty verdict does not "amount to" or "necessarily imply" an affirmative finding of use or exhibition of a deadly weapon. *Id.*

While an allegation that an instrumentality was used to cause the death of a person is sufficient to provide notice, the concept of notice is totally divorced from what is sufficient to support an affirmative finding of a deadly weapon, according to the body of law that has emerged since *Polk. Ex parte Beck*, 769 S.W.2d 525, 527–28 (Tex.Crim.App.1989).

■. In this case, the jury found appellant "guilty as charged in the indictment." The indictment contains no mention of a deadly weapon, nor does the court's charge to the jury. Therefore, the deadly weapon has not been specifically pled.

■ In some instances, an affirmative finding will arise as a matter of law. *Polk,* 693 S.W.2d at 394. For example, where the weapon used is a deadly weapon, per se. *Id.* However, a motor vehicle is not a deadly weapon, per se. *Ray v. State*, 880 S.W.2d 795, 796 (Tex.App.-Houston [1st Dist.] 1994, no pet.).

Finally, an affirmative finding may be made if the trier of fact responds to a special issue submitted during the punishment stage of trial. *Polk*, 693 S.W.2d at 391. While a special issue was submitted to the jury concerning the affirmative finding of a deadly weapon in the event that the jury found the lesser offense of manslaughter, there was no special issue submitted to the jury concerning the finding of a deadly weapon with regard to the allegation of felony murder. This holds true for all three cases.

■ Therefore, the trial court erred in entering its findings as to the use of a deadly weapon. However, the court's finding had no effect on the verdicts of guilty, the punishments assessed, the eligibility for parole, or the failure to grant probation, because murder is an enumerated offense having the same effect as an affirmative finding of a deadly weapon. *See* Tex.Code Crim. P. Ann art. 42.18, § 8(b)(3) (Vernon Supp.1997); Tex.Code Crim P. Ann. art 42.18, § 8(c)(1) (Vernon Supp.1997); Tex.Code Crim. P. Ann. art. 42.12, § 3g(a)(1)(A) (Vernon Supp.1997). In such a case, the judgments may be reformed as necessary, and the improper findings deleted. *Polk,* 693 S.W.2d at 396.

Therefore, we sustain, in part, appellant's tenth point of error and reform the judgments to delete the affirmative findings of a deadly weapon.

### Conclusion

We reform the trial court's judgments to delete the affirmative finding of a deadly weapon and, as reformed, affirm the trial court's judgments.

TAFT, J., concurring.

TAFT, Justice, concurring.

In regard to point of error 10, I agree that the Court of Criminal Appeals has made a distinction between notice that the State is seeking a deadly weapon and what constitutes an affirmative finding by the jury that the defendant used or exhibited a deadly weapon. *See Ex parte Beck*, 769 S.W.2d 525,

527–28 (Tex.Crim.App.1989). Even though an allegation in the indictment that the instrumentality caused the death of the victim is sufficient to give notice that the State is seeking an affirmative finding of a deadly weapon, it is not sufficient that the jury finds the defendant guilty as alleged in the indictment alleging that the instrumentality caused death to constitute an affirmative finding of a deadly weapon. This does not make sense. I urge the Court of Criminal Appeals to re-examine this issue. In the meantime, judicial restraint requires that I concur in following prevailing law.

SCHNEIDER, C.J., and ANDELL, J., also participating.