

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00208-CR

———————————————

ROBYN DYAN SOWERS, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 10
Tarrant County, Texas
Trial Court No. 1527882

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury convicted Appellant Robyn Sowers of misdemeanor driving while intoxicated (DWI); the trial court sentenced her to 75 days in the Tarrant County Jail. She now appeals, arguing in a single issue that her trial counsel was ineffective. We will affirm.

## Background

In the early morning hours of November 14, 2017, Officer Arnold, a night-shift patrol officer for the City of Hurst, Texas, saw a black truck drifting and weaving as it went down the highway in front of him. After observing several traffic violations, Officer Arnold pulled the truck over. At trial, the jury watched the dashcam video, which included footage of the truck's erratic driving, the stop itself, and the driver Sowers's eventual arrest.

Officer Arnold described Sowers as having "glassy" eyes. And although she was driving in Hurst, which is northeast of Fort Worth, she claimed to be on her way from Burleson heading to Springtown—towns that are, respectively, to the south and northwest of Fort Worth. As Officer Arnold put it, Sowers was "definitely off course by a significant amount." Sowers also told Officer Arnold that she had taken Nyquil.

Sowers performed poorly on the standardized field-sobriety tests he then administered to her, displaying all six intoxication clues on the horizontal-gaze nystagmus test, seven of eight during the walk-and-turn test, and four of four intoxication clues when taking the one-leg-stand test.

2

Based on all these things, Officer Arnold arrested Sowers for suspicion of DWI. A resulting blood draw, to which Sowers consented, revealed the presence of methamphetamine in her system.

A unanimous jury found Sowers guilty of misdemeanor DWI. *See* Tex. Penal Code Ann. § 49.04. In accordance with Sowers's earlier election to let the trial court decide any punishment, the trial court sentenced her to 75 days in the Tarrant County Jail. Sowers did not file a motion for new trial.

## Issue on Appeal

Sowers argues in her lone issue that she received ineffective assistance of counsel resulting from the cumulative effect of five different failings—none of which, she concedes, separately "rises to the level of ineffectiveness demanding a reversal of the cause":

- not objecting to Officer Arnold's testimony about certain of Sowers's post-arrest statements because they were not electronically recorded and admitted into evidence, as Texas law requires;

- not objecting to expert toxicology evidence implying that Sowers was an experienced methamphetamine user;

- failing to seek a limiting instruction for (unspecified) evidence admitted under rules 403 and 404(b) of the Texas rules of evidence;

- not objecting to improper closing argument by the State; and

- introducing evidence of Sowers's past criminal history during the punishment phase.

## Applicable Law

To prevail on an ineffective-assistance claim, a defendant must show two things: (1) that counsel's performance was deficient and (2) that the deficient performance deprived him or her of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Prine v. State*, 537 S.W.3d 113, 116 (Tex. Crim. App. 2017). An ineffective-assistance claim must be "firmly founded" in a record that "affirmatively demonstrate[s]" that the claim is meritorious. *Gomez v. State*, 552 S.W.3d 422, 432 (Tex. App.—Fort Worth 2018, no pet.) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). The defendant must prove by a preponderance of the evidence that counsel was ineffective. *Thompson*, 9 S.W.3d at 813.

The first *Strickland* prong, deficient performance, requires a defendant to establish that counsel's performance fell below an objective standard of reasonableness—that is, that counsel's actions did not meet the objective norms for professional conduct of trial counsel. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The second prong, prejudice to the defense, calls for a showing that but for counsel's deficient performance, the trial's outcome was reasonably likely to have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2069; *Thompson*, 9 S.W.3d at 812.

Because the record is usually inadequately developed and "cannot adequately reflect the failings of trial counsel" in a way that allows us to "fairly evaluate the merits of such a serious allegation," it's a "rare case"—as Sowers acknowledges—in which

4

direct appeal is a satisfactory vehicle for assessing ineffectiveness. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *see also Gomez*, 552 S.W.3d at 432. As the court of criminal appeals has said repeatedly, "claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Lopez*, 343 S.W.3d at 143. Without a developed record, counsel should be found ineffective "only if his conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Prine*, 537 S.W.3d at 117 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## Analysis

*Failing to object to Officer Arnold's testimony about certain post-arrest statements.* Sowers's first instance of ineffective assistance involves Officer Arnold's trial testimony about voluntary statements Sowers made while in custody and after receiving the *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S. Ct. 1602, 1612 (1966). Sowers claims that her counsel should have objected because article 38.22 of the code of criminal procedure was not complied with. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (forbidding the use, in a criminal proceeding, of an accused's oral statement "made as a result of custodial interrogation" unless (among other things) the statement was electronically recorded and admitted into evidence). Sowers asserts that "[n]o such recording was made and no such electronic recording was admitted into evidence."

5

The State points out that Sowers is factually mistaken: her post-arrest statements were in fact recorded, admitted into evidence as part of State's Exhibit 3, and published to the jury before Officer Arnold started to recount their conversation. We have reviewed the relevant portions of the electronic recording and agree with the State. Sowers's counsel had no reason to object to Officer Arnold's testimony under article 38.22.

*Failing to object to expert toxicology evidence implying that Sowers was an experienced methamphetamine user.* Sowers argues that her counsel was ineffective for not objecting to allegedly prejudicial testimony of the chief toxicologist for the Tarrant County Medical Examiner's office. Conceding that Dr. Johnson's testimony about the results of Sowers's blood testing was "perfectly proper," Sowers takes issue with his additional testimony about nanogram levels of methamphetamine in the bloodstream and how they might affect "novice" and "tolerant" users differently, claiming that this testimony clearly implied that she was not a novice.

But the context of the complained-of exchange shows that Dr. Johnson was discussing nanogram levels and their possible effects in a generalized way without necessarily implying anything about Sowers's experience one way or another:

> Q. Are you able to say by looking at [Sowers's test result of 614 nanograms per milliliter] whether that's a high or low amount of methamphetamine?
>
> A. Well, it could certainly be fatal in a—in a novice user so the number, again, doesn't mean a lot for any given person. But we start to worry about—in a postmortem case, we start to worry about overdose

6

with numbers above 500 nanograms per milliliter, but in a tolerant user, they could easily have three times as much in them and—and would not be concerned about dying.

. . .

Q. Well, like amphetamine, with methamphetamine there's no—there's no .08, there's no, like, per se standard similar—like the State legislature hasn't said there's a .08 similar to alcohol.

A. There is not, no. Again, any legal—you can't assign any specific side effect to any person based only on the number.

Q. Okay.

A. So there is no legal limit for any drug other than ethanol.

Q. Do you have an opinion as to the amount of which a person should have in their system if they choose to operate a vehicle?

A. You shouldn't have any.

Q. So zero?

A. Yes. Any—any amount above zero makes it dangerous to drive. . . .

The crux of Dr. Johnson's testimony was that any amount of methamphetamine impaired a person's ability to drive safely. The amount that he found in Sowers was potentially dangerous for a novice but comparatively low for a tolerant user. His point was not that Sowers was one or the other but that methamphetamine was present. The actual amount did not correlate to specific side effects or necessarily to a particular drug-use history.

Whatever Sowers's drug history was, her driving suggested that she did not tolerate this particular amount well. Expert opinion even about a particular

defendant's individual drug or alcohol tolerance can be admissible. *See Brazda v. State*, No. 14-97-01278-CR, 1999 WL 717725, at \*3 (Tex. App.—Houston [14th Dist.] Sept. 16, 1999, no pet.) (not designated for publication) (concluding that trial court did not abuse its discretion in allowing expert's testimony about defendant's alcohol tolerance because that opinion reflected on defendant's loss of mental or physical faculties). On this undeveloped record, we cannot say that counsel's failure to object to Dr. Johnson's general testimony was "so outrageous that no competent attorney" would have similarly kept quiet, *Prine*, 537 S.W.3d at 117, and Sowers has not cited us to any authority so holding.

*Failing to seek a limiting instruction for extraneous-offense evidence admitted under Texas Rules of Evidence 403 and 404(b).* Here, Sowers argues in a single short paragraph that her counsel forfeited error by failing to request a limiting instruction to evidence admitted under rules of evidence 403 and 404(b). *See* Tex. R. Evid. 403, 404(b). According to Sowers, this failure "further exacerbate[ed] [counsel's] deficient performance." Although she cites to the court's charge and to that part of the reporter's record in which her counsel said "[n]o objections" to the charge, Sowers has not pointed us to where in the record any evidence supposedly subject to a limiting instruction was admitted, nor does she explain what that evidence was.[1]

---

[1]In context, we assume that Sowers is continuing to refer to the toxicologist's testimony that, according to Sowers, implied that she was an experienced user. But as we have explained in the preceding section, Dr. Johnson's remarks about nanogram

Not only do we not have a developed record from which we might evaluate on direct appeal whether counsel was ineffective for not seeking a limiting instruction, Sowers has not adequately briefed this part of her ineffective-assistance issue. *See Belle v. State*, 543 S.W.3d 871, 875 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Appellant complains of comments made by the trial court when appellant requested self-representation at trial. Appellant's brief contains no references to the record where such comments were made. *See* Tex. R. App. P. 38.1(i). Accordingly the issue is waived."); *Briscoe v. State*, 542 S.W.3d 100, 106 n.6 (Tex. App.—Texarkana 2018, pet. ref'd) (referencing appellate-procedure rule 38.1(i) and noting "[t]he failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal"); *see also* Tex. R. App. P. 38.1(i).

*Failing to object to improper closing argument by the State.* Sowers identifies six comments during the State's closing argument that she contends were improper and thus should have been objected to. The only authority Sowers cites here is a case that simply recites the four proper areas of the State's closing argument: summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). As was the situation in another case from our court, "Appellant did

levels were generalized and did not necessarily imply that Sowers had developed a usage-based tolerance.

9

not cite to any legal authority to support his assertion that the [State's unobjected-to closing] arguments were erroneous." *Escamilla v. State*, No. 02-13-00317-CR, 2014 WL 4463121, at *4 (Tex. App.—Fort Worth Sept. 11, 2014, no pet.) (mem. op., not designated for publication). In contrast, the State asserts that the prosecutor's arguments were proper—and has cited supporting authorities. But even if we overlook a rule 38.1(i) briefing deficiency and assume Sowers is right that the State strayed outside the bounds of proper argument one or more times, Sowers has given us no basis on which to conclude that her counsel's failure to object constituted outrageously poor legal work that no competent lawyer would engage in. *See Prine*, 537 S.W.3d at 117.

Moreover, we do not have a developed record from which to conclude here that failing to object during closing argument represented ineffective assistance as opposed to trial strategy. In a direct appeal from a similar situation, one of our sister courts observed, after declining to label the failure to object as outrageously bad, that "it is possible appellant's trial counsel chose not to object based on a reasonable trial strategy." *Orellana v. State*, 489 S.W.3d 537, 550 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see also Kuhn v. State*, 393 S.W.3d 519, 539 (Tex. App.—Austin 2013, pet. ref'd) ("One such reasonably sound strategic motivation could have been the desire to avoid drawing additional attention to the prosecutor's opinion."). Sowers has not met her burden to persuade us otherwise.

*Introducing evidence of Sowers's past criminal history during the punishment phase.* Finally, but without citing any authority, Sowers argues that her counsel's introducing her criminal history during punishment was "inexcusable." The record before us does not permit us to conclude that trial counsel rendered ineffective assistance by doing so.

Before trial, the State had filed a notice of two extraneous offenses forming Sowers's criminal history that it might introduce into evidence. Once the jury returned its guilty verdict, Sowers elected to have the trial court assess her punishment and took the stand to ask for probation because of her mother's health problems. The State postulates that trial counsel could have anticipated Sowers's being cross-examined about her criminal history and chosen to confront it head-on during direct examination to appear more forthright and candid in her quest for leniency. That theory does not strike us as unreasonable, and so we disagree with Sowers that "[n]o legitimate purpose can be contrived to excuse this decision." More to the point, on this record we cannot know what trial counsel was thinking, but we do know that "[t]o conclude counsel's performance was deficient, we would have to engage in prohibited speculation." *Escamilla*, 2014 WL 4463121, at *4.

Moreover, Sowers admits that the record is silent regarding whether she understood her right not to testify and whether she waived it knowingly, nor does the record show whether Sowers testified against her counsel's advice. If she did, this changes the dynamics: "When a defendant [who testifies against his counsel's advice] refuses to follow trial counsel's strategy, a claim of ineffective assistance of counsel is

11

inappropriate." *Montoya v. State*, No. 14-97-00196-CR, 1999 WL 374092, at *5 (Tex. App.—Houston [14th Dist.] June 10, 1999, no pet.) (not designated for publication) (citing *Duncan v. State*, 717 S.W.2d 345, 348 (Tex. Crim. App. 1986)). "[W]hen a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made." *Duncan*, 717 S.W.2d at 348; *see also Thompson v. State*, Nos. 02-18-00230-CR, 02-18-00231-CR, 02-18-00232-CR, 2019 WL 1065925, at *4 (Tex. App.—Fort Worth May 8, 2019, pet. ref'd) (mem. op., not designated for publication) ("A criminal defendant has a constitutional right to testify in his defense, including during the punishment phase of the trial. This right can be knowingly and voluntarily waived only by the defendant, not his counsel." (internal citations omitted)).

In short, Sowers has not carried her burden to show by a preponderance of the evidence that her trial counsel's performance was constitutionally deficient in any of the listed ways.[2]

---

[2]And that is of course but one of the *Strickland* prongs: Sowers has said virtually nothing about the companion requirement that the deficient performance resulted in prejudice, which in this context means a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Holland v. State*, 761 S.W.2d 307, 314 (Tex. Crim. App. 1988) (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). Here, the jury heard direct evidence on every element of the charged offense. *See Escamilla*, 2014 WL 4463121, at *4 n.3 ("Even if defense counsel's failure to object to the prosecutor's closing argument was deficient conduct, the jury heard direct evidence from the complainant on every element of the offense charged. Appellant failed to meet the second prong of *Strickland*—that there was a reasonable probability that the result of the trial would have been different had the objections to the arguments been sustained. *See Washington v. State*, 771 S.W.2d

And without some error of that type, there can be no cumulative error: non-errors cannot cumulate to create harmful error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). Particularly in view of Sowers's concession that "no single act o[r] omission by counsel rises to the level of ineffectiveness demanding a reversal of the cause," she has not met her burden under *Strickland. See Rodriguez v. State*, 336 S.W.3d 294, 303 (Tex. App.—San Antonio 2010, pet. ref'd) (holding that because appellant "did not meet her burden of establishing individual instances of ineffective assistance of counsel," she "cannot show an adverse cumulative effect" from trial counsel's actions). We therefore overrule Sowers's appellate issue.

## Conclusion

Having overruled Sowers's sole issue on appeal, we affirm the trial court's judgment.

---

537, 545 (Tex. Crim. App. 1989).").  And regarding punishment, despite Sowers's committing this offense while on probation for another offense, the trial court's sentence falls in the punishment range's lower half. *See* Tex. Penal Code Ann. §§ 12.22(2) (authorizing confinement in jail for a term not to exceed 180 days for a Class B misdemeanor), 49.04(b) (providing that DWI is generally a Class B misdemeanor).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 22, 2019