RENDERED: FEBRUARY 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0021-MR

SHAWN WELSH                                                      APPELLANT

V.

ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KEN M. HOWARD, JUDGE
NO. 18-CR-01055

COMMONWEALTH OF KENTUCKY                              APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

After leading officers from three law enforcement agencies on a two-county chase that began in Meade County, Appellant Shawn Welsh crashed his truck into a vehicle in Hardin County occupied by a teen driver and three teen passengers. The driver and front-seat passenger died at the scene, and the other two passengers suffered serious physical injuries. Welsh was convicted by a Hardin County jury of two counts of wanton murder; two counts of assault in the first degree; illegal possession of a controlled substance, first offense, methamphetamine; fleeing/evading in the first degree (motor vehicle); receiving

stolen property over $500 (automobile); driving under the influence (DUI), first offense;[1] and of being a persistent felony offender in the first degree (PFO I).

On appeal, Welsh does not argue that he is not guilty of any crimes and should not be held accountable for the lives lost and harm caused due to his actions. Instead, he contends that the officers involved in the chase, particularly the officer initiating the chase, were also blameworthy because they allegedly violated their respective law enforcement agency's policies and procedures regarding high-speed pursuits. His primary complaint on appeal is that by not allowing him to introduce into evidence the agencies' policies and procedures, the trial court deprived him of his right to present a defense. Welsh's other complaint is that the trial court did not allow him to use the Meade County officer's personnel file for impeachment purposes. Upon review, we affirm the Hardin Circuit Court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2018, Meade County Deputy Brandon Casey,[2] on patrol in his marked police vehicle, first saw Welsh driving on Highway 313 headed toward Brandenburg. Deputy Casey did not know Welsh at that time. Welsh's truck did not attract Deputy Casey's attention until he noticed it repeatedly braking and slowing down as if intending to turn off the main road. Deputy

---

[1] Analysis of Welsh's blood sample taken at the hospital following the crash revealed that the level of methamphetamine was twenty times higher than what would be considered a therapeutic level.

[2] Deputy Casey was employed as an officer by the Hardin County Sheriff's Office at the time of trial but worked for the Meade County Sheriff's Office in October 2018.

Casey thought Welsh was possibly lost, but the deputy also viewed Welsh's braking action as indicating that Welsh did not want a police vehicle traveling behind him. Given that assumption and the fact Welsh was headed to an area which was private property when he turned onto Down Home Lane, a dead-end road with only an abandoned car lot, Deputy Casey became suspicious of Welsh's activity. Deputy Casey followed Welsh and by the time he reached the one-lane road's end, Welsh's truck was facing him. According to Deputy Casey's testimony, the two made eye contact and then Welsh accelerated at an extremely high rate of speed on the gravel toward him. With his vehicle still in drive, Deputy Casey accelerated and moved to the right to avoid a collision.[3] Although Deputy Casey turned his emergency equipment on as Welsh came toward him, Welsh did not react and continued down the lane. Deputy Casey turned around to follow Welsh, turning right onto Highway 313 toward Hardin County.

Deputy Casey estimated that the twenty-one to twenty-two mile pursuit, the majority of which occurred in Hardin County[4] and which was joined by a Vine Grove police officer and a Radcliff police officer, lasted about eighteen minutes and that Welsh's collision with the teens occurred about 8:30 p.m. The pursuit occurred on highways, in towns, in business districts, and in residential areas. Deputy Casey testified that at times, on straight stretches,

---

[3] Welsh did not testify, and Deputy Casey's testimony is uncontroverted.

[4] Deputy Casey estimated six to eight miles of the pursuit occurred in Meade County.

Welsh traveled at approximately 100 miles per hour, forcing other motorists to move out of the way, and that he passed vehicles on the shoulder in order to avoid a collision. Deputy Casey also testified that Welsh traveled at seventy-five miles per hour in a residential area, did not obey traffic signals and ran several stop signs. Deputy Casey observed Welsh's vehicle become airborne as it drove over a railroad crossing on Highway 1500 and then proceeded through another red light. After running more red lights and stop signs, Welsh drove through a four-way intersection at seventy miles per hour. He also drove into the opposite lane of traffic and into a ditch to avoid capture. The officers lost sight of Welsh after he turned onto Dixie Highway (U.S. 31W). Welsh was driving at a high rate of speed in the emergency lane to avoid traffic and hit the teens' vehicle, which was turning left at a green light onto Dixie Highway. According to the event data recorder from Welsh's truck, five seconds before the crash, his vehicle was going seventy-nine miles per hour.

Welsh was found guilty of all charges, including being a PFO I, and was sentenced to life in prison. He received a life sentence on each murder and each assault conviction; twenty years for fleeing/evading police; twenty years for receiving stolen property over $500; three years for illegal possession of a controlled substance (methamphetamine); and thirty days for DUI.

As noted, Welsh raises two issues on appeal. Other facts pertinent to those issues are presented below.

## ANALYSIS

### I.    The Trial Court Did Not Abuse Its Discretion by Excluding Police Pursuit Policies and Procedures from Evidence.

Believing Welsh intended to introduce evidence that either the police officers violated their pursuit policies or that they in some way contributed to Welsh's wanton conduct, prior to trial the Commonwealth filed a motion to preclude admission of the various law enforcement agencies' policies and procedures regarding pursuits. The Commonwealth argued that such evidence was not relevant to whether Welsh was acting in a wanton manner when operating the vehicle and would likely confuse the issues. Welsh, on the other hand, argued that witness credibility is always relevant, focusing on Deputy Casey's potential bias and denial of violating the Meade County Sheriff's pursuit policies because of the civil suit brought against him as a result of the pursuit. Citing *Robertson v. Commonwealth*, 82 S.W.3d 832, 837 (Ky. 2002) (quoting *People v. Schmies*, 51 Cal. Rptr. 2d 185 (Ct. App. 1996)), the trial court agreed with the Commonwealth and concluded that evidence relating to the law enforcement agencies' policies and procedures was not relevant to the determination of Welsh's guilt on the criminal charges in this case. The trial court also concluded that such evidence would unnecessarily confuse the issues for the jury.

In addition to the wanton murder and first-degree assault charges, the jury was also instructed on the lesser-included unintentional homicide crimes of second-degree manslaughter and reckless homicide and unintentional second-degree assault. The jury found Welsh guilty of the crimes as charged

5

and he received the maximum penalty on all charges. On appeal, Welsh claims that due to the trial court excluding the police pursuit policies and procedures he was not able to give the jury all the facts and he was denied the right to present a full defense. He reasons that had the jury known this information he may have been convicted of lesser-included offenses instead of the indicted charges.

The Meade County Sheriff's Office policy states: "Pursuits shall be for a violent felony offense, or use of force likely to cause death or serious physical injury, or threatened use of such force." The policy describes one situation for termination of pursuit to be when "[t]he deputy reasonably believes the danger created by continuing the pursuit outweighs the need for immediate apprehension." The pursuit policies for Radcliff and Vine Grove police officers similarly recognize the dangers of pursuit and for summary purposes here, generally direct the officer to make a holistic evaluation of the situation, including the seriousness of the offense, when initiating and continuing the pursuit. Welsh emphasizes that because Deputy Casey had no idea if Welsh had committed a crime[5] and since Welsh had not committed a traffic violation, nothing pointed to a need for "immediate apprehension."

Welsh disagrees with the Commonwealth and the trial court that the evidence of the policies governing the officers' involvement in the high-speed

---

[5] After the pursuit, officers discovered that Welsh was driving a stolen vehicle. According to Deputy Casey's testimony, he could see that the truck had an out-of-state license plate, but he never was close enough to see and run the plate numbers.

pursuit may be excluded under Kentucky Rules of Evidence (KRE) 401, 402, and 403.[6] Citing *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *United States v. Scheffer*, 523 U.S. 303, 309 (1998); and *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), Welsh asserts that even if this Court were to conclude that the policies would have confused the issues, misled the jury or caused delay, his constitutional right to present a defense must not be abridged by the mechanistic application of the evidentiary rules. Citing *Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012), he contends that his case is one in which all the facts must be heard by the jury to present an accurate picture of the events. That picture, he says, includes the officers' failure to follow proper policies and procedures. In Welsh's view, this was mitigating evidence of his guilt and would have supported the jury finding him guilty of a lesser-included offense on each of the two counts of wanton murder and a lesser-included offense on each of the two counts of first-degree assault.

To support his position, Welsh cites two cases from other jurisdictions which also involved the exclusion of a law enforcement agency's pursuit policy: *State v. Lovelace*, 738 N.E.2d 418, 432 (Ohio App. 1999) and *Medina v. State*, 962 S.W.2d 83, 85 (Tex. App. 1997). In these cases, the appellate court did not find the pursuit policy relevant to the defendant's criminal responsibility and upheld the trial court's decision to exclude the policy. Welsh believes a

---

[6] Although Welsh's focus before the trial court was the relationship of the pursuit policy to Deputy Casey's credibility, Welsh does not argue that aspect of the policy relevancy before this Court.

7

different conclusion is merited here because unlike in *Lovelace* and *Medina,* he had committed no known crime or violation that would justify the officers' pursuit. Rebutting the Commonwealth's argument, Welsh also contends that *Robertson* supports his position. In *Robertson,* a police officer fell to his death from a bridge while pursuing a suspect, and this Court "granted discretionary review to further consider the circumstances under which criminal liability can be imposed upon a defendant for injuries or death directly caused by the volitional act of another." 82 S.W.3d at 834. Welsh believes *Robertson* supports his position because the Court, when discussing causation and foreseeability, posed the question, "Did the defendant commit an illegal act that induced the officer's response?" *Id.*

The Commonwealth maintains that the police pursuit policies and procedures are not relevant to Welsh's actions. The Commonwealth relies on *Robertson, id.* at 837, for the premise that an officer's shared responsibility in an accident does nothing to exonerate a defendant for his role. The Commonwealth emphasizes that the relevant concern is Welsh's *mens rea*— what he knew or should have known concerning the probable consequences of his conduct.

As noted above, the jury was instructed on wanton murder,[7] second-degree manslaughter,[8] reckless homicide,[9] first-degree assault,[10] and second-degree assault.[11] To obtain a conviction of a defendant, the Commonwealth has the burden to prove beyond a reasonable doubt each element of the crime charged. KRS 500.070(1); *see In re Winship*, 397 U.S. 358, 364 (1970). To defend against a conviction, the defendant may choose to counter the Commonwealth's proof and present evidence to negate an element(s) of the crime. *See Jewell v. Commonwealth*, 549 S.W.2d 807, 812 (Ky. 1977). In this case, Welsh contends that had the jury heard that Deputy Casey was not complying with the Meade County Sheriff's Office pursuit policy, the jury could have convicted him on lesser charges. However, Welsh does not explain how

---

[7] Pertinently, Kentucky Revised Statute (KRS) 507.020(1)(b) provides that "[a] person is guilty of murder when . . . [operating] a motor vehicle under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person."

[8] KRS 507.040(1)(a) provides that "[a] person is guilty of manslaughter in the second degree when he wantonly causes the death of another person, including but not limited to situations where the death results from the person's operation of a motor vehicle."

[9] KRS 507.050(1) provides that "[a] person is guilty of reckless homicide when, with recklessness he causes the death of another person."

[10] KRS 508.010(1)(b) provides that "[a] person is guilty of assault in the first degree when under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person."

[11] KRS 508.020(1)(c) provides that "[a] person is guilty of assault in the second degree when he wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument."

9

hearing that Deputy Casey did not comply with the pursuit policy would have negated the elements of the charged crimes or raised reasonable doubt that he did not commit wanton murder or first-degree assault.

"All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the Commonwealth of Kentucky, by Acts of the General Assembly of the Commonwealth of Kentucky, by [the Kentucky Rules of Evidence], or by other rules adopted by the Supreme Court of Kentucky." KRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403.

Considering Welsh's concession on appeal that he should not be exonerated but rather that he could be found guilty of lesser-included offenses, we begin with an analysis of the elements of the primary crimes and the lesser-included offenses to determine whether the pursuit policies were relevant evidence. Beginning with the plain language of the wanton murder and second-degree manslaughter statutes and the definition of wanton actions, the two homicide offenses

> have three elements in common: the conduct in question must
> have involved a substantial and unjustifiable risk of death to
> human life; the defendant, in causing the death in question, must
> have consciously disregarded that risk, and his disregard must

10

> have constituted "a gross deviation from the standard of conduct that a reasonable person would [have observed] in the situation." Taken together, these three elements constitute the culpable mental state defined in KRS 501.020 as "wantonness," and without more, will suffice for a conviction of manslaughter in the second degree. If accompanied by a fourth element, i.e., "circumstances manifesting extreme indifference to human life," they are sufficient for a conviction of murder. . . .

KRS 507.020 cmt. (brackets in original). Conduct manifesting "extreme indifference to the value of human life" also primarily distinguishes unintentional first- and second-degree assault. *See* KRS 508.010 cmt. For both the unintentional homicide crimes (wanton murder and second-degree manslaughter) and unintentional assault crimes (first- and second-degree assault) we cannot discern how hearing that Deputy Casey or the other officers did not comply with pursuit policies would have created reasonable doubt that Welsh was operating a motor vehicle under circumstances manifesting extreme indifference to human life.

As for Welsh's argument that consideration should be given to the officers' fault in the accident when determining his level of culpability, this point was handled simply and aptly by the trial court, quoting from *Robertson*:

> [T]he negligence or other fault of the officers is not a defense to the charge against defendant. The fact that the officers may have shared responsibility or fault for the accident does nothing to exonerate defendant for his role. In short, whether the officers' conduct could be described with such labels as negligent, careless, tortious, cause for discipline, or even criminal, in an action against them, is not at issue with respect to the defendant here. . . .

82 S.W.3d at 837 (quoting *Schmies*, 51 Cal. Rptr. 2d at 193).

In *Schmies*, one officer pursuing the defendant killed another motorist. 51 Cal. Rptr. 2d at 188. The defendant attempted to demonstrate that the

officer's actions broke the chain of causation, relieving the defendant of his criminal responsibility for the victim's death, by obtaining the police department's pursuit policy to show that the officers' actions violated its guidelines. *Id.* at 45. The trial court precluded evidence relating to the reasonableness of the police officers' conduct during the pursuit. *Id.* at 43. The trial court distinguished the question of foreseeability from the question of reasonableness. *Id.* The California appellate court, upholding the trial court's exclusion of evidence of the pursuit policies, considered that the reasonableness, or lack thereof, of the officers' conduct was not in itself an issue with respect to the defendant's offenses, noting that none of the defenses to crimes that depend upon the behavior of others were arguably presented. *Id.* at 46. The appellate court further considered precedent holding that contributory negligence is not available as a defense or excuse for crime and that the conduct of the victim or other third persons, whether negligent or even criminally proscribed, is not, in itself, a defense to crime. *Id.* Turning to the California Penal Code, the appellate court also pointed out that the reasonable behavior of other persons was not, in itself, an element of the defendant's manslaughter offense and citing evidentiary rules, concluded that the "reasonableness of the officers' conduct is at best an evidentiary matter which can have relevance only to the extent that it tends to prove or disprove an element of the crime or a recognized defense thereto." *Id.*

*Schmies* contains an extensive discussion of criminal causation under California law and emphasizes that it is the defendant who is charged with a

12

crime and consequently the focus is on that defendant's mental state and actions. *See id.* at 51-52. A plain language analysis of the Kentucky statutes at issue in this case requires the same conclusion. KRS 501.060, entitled "Causal relationships," focuses on the criminal state of mind necessary for a defendant to be found guilty of certain criminal actions and the accompanying commentary reminds us that Kentucky's Penal Code now deals with causation through the *mens rea* required to commit the crime, eliminating the need for distinguishing between "remote" and "proximate" causes and avoiding the difficulty inherent in that distinction.

This emphasis on the defendant's state of mind and actions predates our Penal Code. Years ago in *Embry v. Commonwealth*, this Court's predecessor noted "[t]he state was required to prove the alleged unlawful act of the accused and its consequences, but not that the deceased exercised due care to avoid the consequences of that unlawful act." 32 S.W.2d 979, 981 (Ky. 1930) (citation omitted) (considering whether the trial court erred by not giving a contributory negligence instruction as to the victim's fault in not escaping the explosion caused by the defendant). While *Embry* focused on the victim's behavior rather than a third-party police officer's, the Court's analysis bears mention:

> "It is again said that, in order to convict the defendant of negligently and recklessly causing the death of [the victim], the state should have negatived contributory negligence on the part of the latter. It is enough to say that contributory negligence, if shown, is never a defense or excuse for crime, nor can it in any degree serve to purge an act otherwise constituting a public offense of its criminal character. The defendant was not indicted for a crime or offense against [the victim], but against the state."

13

*Id.* (quoting *State v. Moore*, 106 N.W. 16, 17 (Iowa 1906)). The *Embry* Court concluded by stating: "Whatever may have been the former view of the courts on this question, it is now the general rule that contributory negligence that would defeat a civil action for damages is not available as a defense to a prosecution for manslaughter as the result of negligence." *Id.* (citing *Moore* and cases from other jurisdictions).

Although the parties do not direct this Court's attention to criminal cases advancing contributory negligence as a defense, we find no reason why the rule expressed in *Embry*, which comports with the preceding statutory analysis, should not be applied to Welsh's argument that he could have been found guilty on a lesser-included charge of wanton murder or first-degree assault based on the officers' alleged contributing role. Whatever role failure to abide by a law enforcement agency's pursuit policy may play in civil litigation, it has no bearing on a criminal prosecution where the focus is on the defendant, his state of mind and his actions.

In sum, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (citations omitted). Applying Kentucky Rules of Evidence and general principles of criminal responsibility, the trial court determined that any negligence on the part of the officers was not relevant to

the jury's determination of whether Welsh was guilty of the criminal offenses charged. Welsh fails to show otherwise. Accordingly, we cannot find that the trial court abused its discretion[12] by excluding the pursuit policies from evidence.

## II. The Trial Court Did Not Commit Reversible Error by Not Allowing Deputy Casey to Be Cross-examined About the Reprimands in His Personnel File.

During Deputy Casey's cross-examination, he was asked if he had ever been reprimanded in the past on his job, particularly in Meade County. He responded, "Not that I'm aware." The Commonwealth objected based upon relevance. At the ensuing bench conference, defense counsel referenced Deputy Casey's Meade County Sheriff's Office personnel file, an eighty-page file received just that day. According to counsel, the file contained many reprimands, including reprimands for using excessive force, for tasing too many people, and for lying about gas mileage. Defense counsel planned to use the file information to impeach Deputy Casey's credibility if Deputy Casey denied the reprimands. The trial court sustained the Commonwealth's objection to the planned use of the file information. Welsh argues on appeal that the trial court's ruling was an abuse of discretion because a witness's bias and credibility are always relevant.

---

[12] An abuse of discretion occurs when the trial court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Welsh points out that under KRE 608(b), a simple inquiry into evidence that reflects on the witness's truthfulness is allowed on cross-examination. KRE 608(b) states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. No specific instance of conduct of a witness may be the subject of inquiry under this provision unless the cross-examiner has a factual basis for the subject matter of his inquiry.

As described by defense counsel to the trial court, hearing about the reprimands would allow the jury to know that Deputy Casey is "not a good police officer" and would impeach his credibility. The Commonwealth correctly notes evidence of whether someone is or is not a good police officer is character evidence and not admissible under KRE 404. However, within the three instances described by defense counsel and which provide enough detail for appellate review under KRE 608(b), the reprimand(s) related to lying about gas mileage appears to be a specific instance concerning Deputy Casey's character for truthfulness or untruthfulness. The other reprimands for excessive force and tasing too many people, while reflective of reprehensible conduct, would not qualify for admission under KRE 608(b). Without distinguishing among the reprimands, the trial court denied cross-examination of Deputy Casey on all of them, reasoning they had little probative value and would lead to confusion of

16

the issues. While this reasoning was based on sound legal principles and cannot be viewed as an abuse of discretion as to the excessive force and tasing reprimands, the lying reprimand can be viewed differently.

A documented instance of Deputy Casey having lied in the course of his official duties seemingly qualifies under KRE 608(b) as admissible evidence of his untruthfulness. The rule, however, plainly states that the evidence "may" be admitted "in the discretion of the court." KRE 608(b). Given the significant, unrefuted evidence of Welsh's wanton criminal conduct and the role Deputy Casey occupied when he testified at trial (essentially as narrator of the pursuit), we cannot say that excluding testimony that he once lied about gas mileage was an abuse of discretion. Even if the trial court's ruling could be characterized as error, it was harmless because it could not have substantially swayed the verdict. *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009) (error is harmless if reviewing court can say "with fair assurance that the judgment was not substantially swayed by the error").

Finally, Welsh contends, citing *Sheets v. Commonwealth*, 495 S.W.3d 654, 667 (Ky. 2016), that the cross-examination of Deputy Casey was proper rebuttal going to his credibility because Deputy Casey opened the door by asserting that he had never been reprimanded. Because Deputy Casey's character was not put into issue by the Commonwealth, we agree with the Commonwealth that the circumstances of this case do not support Welsh's "opening the door" argument. *See Norris v. Commonwealth*, 89 S.W.3d 411, 414 (Ky. 2002) ("In a typical case, a witness will make an inadmissible

17

assertion and the opposing party is then permitted to introduce evidence to the contrary."); *Stone v. Commonwealth*, 291 S.W.3d 696, 701-02 (Ky. 2009) ("Generally stated, 'opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof.").

## **CONCLUSION**

For the foregoing reasons, the Hardin Circuit Court's judgment is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Mark Daniel Barry
Assistant Attorney General

18