Opinion issued August 8, 2023



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NOS. 01-21-00523-CR & 01-21-00524-CR

————————————

**DIAWANNAH CORTEASHER THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 208th District Court
Harris County, Texas
Trial Court Case Nos. 1661383 & 1661384

## MEMORANDUM OPINION

A jury convicted appellant Diawannah Corteasher Thomas of the offenses of

felony murder and aggravated assault on a public servant by threat with a deadly

weapon.[1] The trial court assessed her punishment at two concurrent 34-year terms of confinement in prison. On appeal, Thomas argues that (1) the evidence was insufficient to support her conviction for aggravated assault of a public servant and (2) the evidence was insufficient to support her conviction for felony murder. Because we conclude that the evidence was sufficient to support both convictions, we affirm the judgment for both convictions.[2]

## Background

In the early morning hours of January 21, 2020, off-duty police officer H. Recinos observed a large U-Haul moving truck parked directly in front of the closed Sunny's Food Mart. Recinos noticed the vehicle and several individuals running in and out of the store. He then called 9-1-1 to report his suspicions that the business was being burglarized.

Officer M. Daily, who was assigned by the Houston Police Department to patrol the area where Recinos saw the suspected burglary in progress, located the U-Haul near the reported area shortly after Recinos's 9-1-1 call. Officer Daily followed

---

[1]   *See* TEX. PENAL CODE § 19.02(b)(3) (felony murder); *id.* § 22.02(a)(2) (aggravated assault with deadly weapon); *id.* § 22.02(b)(2)(B) (elevating aggravated assault to first-degree felony when committed against public servant).

[2]   Thomas was indicted for the offense of aggravated assault in trial court cause number 1661383, resulting in appellate cause number 01-21-00523-CR. Thomas was indicted for the offense of felony murder in trial court cause number 1661384, resulting in appellate cause number 01-21-00524-CR.

the U-Haul in a marked police unit. He observed the U-Haul driving erratically, failing to signal turns, and running a stop sign. Because of this, Officer Daily activated the patrol unit's lights and sirens to initiate a traffic stop. The U-Haul then sped off through the neighborhood, running stop signs, and red lights.

Thomas, who was later identified as the driver, and her co-actors Denise Miles, James Robertson, and Lance Prater fled from Officer Daily in the U-Haul. Other HPD officers, including Officers B. Aber and S. Precour, joined Officer Daily in attempting to stop Thomas. The chase that ensued lasted approximately 26 minutes, covering over 25 miles of commercial and residential areas. In the course of the chase, two of Thomas's co-actors jumped out of the U-Haul. This resulted in Prater, the complainant in the felony murder case, being run over by Thomas in the U-Haul as he attempted to exit the truck. As she fled police, Thomas also struck a police vehicle, injuring Officer Precour. Thomas was finally stopped when officers deployed a spike strip.

At trial, Officers Daily, Precour, and others testified that Thomas drove erratically, recklessly, and dangerously, exceeding 80 miles per hour while committing numerous traffic violations. The jury was also presented with body camera footage and other videos of the events that occurred in the chase. At one point during the chase, as Thomas slowed to make a U-turn, Officer Daily observed Robertson climb out of the front passenger window and jump from the vehicle to

3

flee on foot. Robertson sustained no injuries. Prater then attempted the same but clung to the extended passenger side mirror after exiting the window as Thomas accelerated out of the slow U-turn. Prater clung to the mirror for over a minute despite his feet dragging on the pavement below as Thomas continued to speed and drive erratically. The danger of Prater's situation was clear to Officer Daily, yet Thomas continued the high-speed chase.

Officer Daily testified that, as the U-Haul sped down a service road of the 610 Loop with Prater clinging to the side mirror, Thomas veered the U-Haul sharply to the left and then sharply back to the right to avoid colliding with a motorcycle turning onto the same 610 service road from North Main Street. These maneuvers shook Prater from the passenger side mirror and swept his body under the U-Haul. Thomas ran over Prater with the back axle of the U-Haul and then continued to flee the police. The assistant medical examiner testified that Prater's death was caused by contact with a vehicle. Thomas's U-Haul was the only vehicle that contacted Prater's body.

The chase continued into a residential neighborhood with multiple police units in pursuit. There, Officers Daily, Aber, and Precour, all in marked police units with lights and sirens activated, witnessed the U-Haul lose control and crash into a tree with large low-hanging branches in a resident's front lawn. Thinking Thomas would stop, or the U-Haul would be disabled from the collision, officers attempted to surround the vehicle with their police units to perform a "felony stop."

4

Thomas, however, refused to stop and turned directly into the driver's side of Officers Aber and Precour's police unit as they attempted to block the U-Haul's forward path. The collision occurred in the street before the police unit had entered the front lawn where Thomas had crashed. Multiple officers testified to the availability of other routes of escape which would have avoided contact with the police unit. Damage resulting from the collision included a broken front axle and shattered driver's side window, disabling the police unit and injuring Officer Precour's knee.

Undeterred by the damage, Thomas continued to flee in the U-Haul. The chase finally ended several minutes after a successful deployment of spike strips by an HPD officer. Thomas tried to keep going on bare tire rims, but she and co-actor Miles eventually surrendered to police. The U-Haul sustained "substantial" damage during the chase. Additionally, large amounts of stolen alcohol, stolen clothing, and criminal tools were found in the U-Haul.

The jury found Thomas guilty of felony murder in connection with Prater's death. The jury also found her guilty of aggravated assault of a public servant for striking Officer Precour's vehicle with the U-Haul, which the jury found she used as a deadly weapon. The trial court assessed two 34-year sentences to run concurrently. Thomas now appeals both judgments of conviction.

## Standard of Review

In two issues on appeal, Thomas contends that the evidence presented at trial was insufficient to support the first-degree felony convictions of (1) felony murder and (2) aggravated assault on a public servant by threat with a deadly weapon. To assess the legal sufficiency of the evidence supporting a criminal conviction, all evidence must be considered in the light most favorable to the verdict to determine whether, based on evenly weighted direct and circumstantial evidence, in addition to reasonable inferences drawn from the evidence, a rational juror could have found all essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (holding that it is "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

If a rational trier of fact could have found all essential elements of the alleged crime beyond a reasonable doubt, then the evidence is considered legally sufficient. *See Robinson v. State*, 466 S.W.3d 166, 173 (Tex. Crim. App. 2015) (affirming that "sufficiency-of-the-evidence reviews . . . should be conducted under the well-established *Jackson* standard"). The reviewing court may rely on events occurring before, during, or after the commission of the offense to conclude on the sufficiency of the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*,

152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Should the evidence contain any inconsistencies, they are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

## Felony Murder

In her sole issue under appellate cause number 01-21-00524-CR, Thomas argues that the evidence was insufficient to support her conviction for the offense of felony murder in connection with Prater's death because her actions were not sufficient to cause his death.

**A. Relevant Law**

A person commits the offense of felony murder when a person

commits or attempts to commit a felony, other than manslaughter, and in the course and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, [she] commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE § 19.02(b)(3). The trial court instructed the jury that it should find Thomas guilty if it found beyond reasonable doubt that she committed or attempted to commit the felony offense of evading arrest or detention in a motor vehicle, and while in furtherance of that crime, she committed or attempted to commit an act clearly dangerous to human life that caused the death of Prater.

Appellant conceded that all elements of felony evading arrest were satisfied by the evidence presented at trial. *See id.* § 38.04(b)(2) (evading arrested elevated to

7

felony when vehicle used and injury to another directly results). Thomas challenges, instead, the sufficiency of the evidence regarding the "but for" causation of Prater's death, alleging that Prater's actions created a concurrent cause sufficient to cause his death independent of any of Thomas's own actions.

The Penal Code speaks directly to the nature of causation required to hold a person criminally liable: the actor "is criminally responsible if the result would not have occurred but for [her] conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.* § 6.04(a); *Cyr v. State*, 665 S.W.3d 551, 557 (Tex. Crim. App. 2022). "But for" causation is not satisfied where an actor's conduct is a mere contributing factor to the resulting injury. *See Cyr*, 665 S.W.3d at 558; *see also Medina v. State*, 962 S.W.2d 83, 86–87 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (holding that police chasing defendant's car was not clearly sufficient concurrent cause, and defendant hitting victim's car after running red light was not clearly insufficient cause of victim's injuries). However, "an actor need not be the sole cause of the harm." *Cyr*, 665 S.W.3d at 557. "Where two or more causes satisfy 'but for' causation, a criminal defendant remains liable if her conduct was either sufficient to have caused the result alone 'regardless of the existence of a concurrent cause,' or both causes '*together*' were sufficient to

cause the result." *Id.* (quoting *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986) (emphasis in original)).

## B.    Analysis

Here, the evidence at trial demonstrated that Prater's death occurred during Thomas's commission of felony evading arrest as she attempted to evade police in the U-Haul. *See* TEX. PENAL CODE §§ 6.04(a), 38.04(b)(2). The evidence and testimony detailed Thomas's reckless driving, which a rational jury could have determined constituted "an act clearly dangerous to human life." *See id.* § 19.02(b)(3). Following the U-Haul throughout the chase, Officer Daily noted the numerous traffic violations that Thomas committed while she fled. Thomas's driving in the large U-Haul truck was erratic; she was observed speeding, swerving through lanes of traffic, running stop signs and red lights, nearly colliding with other motorists, crashing into a residential front yard, and ramming a police unit. Thomas's dangerous and reckless driving occurred "in the course and in furtherance of the commission or attempt" of felony evading arrest. *See id.* Operating a large motor vehicle recklessly during the commission of a felony satisfies the requirement of "an act clearly dangerous to human life." *See e.g.*, *Bigon v. State*, 252 S.W.3d 360, 366 (Tex. Crim. App. 2008) (concluding that driving Jeep towing trailer across center-line constituted act clearly dangerous to human life); *Carter v. State*, No. 01-07-00301-CR, 2008 WL 5177903, at *3 (Tex. App.—Houston [1st Dist.] Dec. 11,

2008, pet. struck) (mem. op., not designated for publication) (affirming felony murder conviction based on commission of acts clearly dangerous to human life in course of felony DWI, including by failing to maintain single lane of traffic, failing to take proper evasive action, failing to control his speed, failing to properly use safety appliances, and failing to maintain proper lookout).

Thomas argues that Prater's actions—i.e., exiting the U-Haul while in motion and hanging from the side mirror—were a sufficient concurrent cause of his death regardless of her own actions. While Prater's actions were dangerous, they are not "clearly sufficient to produce the result" or to render Thomas's own conduct "clearly insufficient" to cause Prater's death. *See* TEX. PENAL CODE § 6.04(a); *Cyr*, 665 S.W.3d at 557–58. Prater's actions in exiting the U-Haul through the passenger window and hanging on the side mirror were a contributing factor to his death. But his death would not have occurred but for Thomas's conduct in speeding up, continuing to drive, and swerving erratically while Prater clung to the side of the vehicle. *See Cyr*, 665 S.W.3d at 557 (holding that "an actor need not be the sole cause of the harm" and remains criminally liable "if her conduct was either sufficient to have caused the result alone 'regardless of the existence of a concurrent cause,' or both causes '*together*' were sufficient to cause the result); *see also Medina*, 962 S.W.2d at 86–87 (holding that "to have established police conduct as a concurrent cause, appellant had to do more than simply show that the police actions contributed

to the result"; rather, appellant "had to show that the conduct of the police . . . was sufficient to produce the result").

Co-actor Robertson was able to climb out of the U-Haul's passenger window and jump from the vehicle without injury as Thomas decreased speed to perform a U-turn. Prater then attempted the same action. But, as Prater exited the vehicle, Thomas accelerated out of the U-turn to continue to evade the police, forcing Prater to cling to the extended side mirror of the U-Haul rather than allowing him to get clear of the vehicle as Robertson had done. Although Prater was clinging to the extended side mirror for over a minute while his feet dragged on the pavement below, Thomas never slowed and continued to drive erratically to avoid collisions with other motorists. This ultimately resulted in Prater losing his grip on the mirror, being pulled under the U-Haul, and run over by the back wheels, causing his death. Thomas's actions of continuing to speed and drive erratically while committing the offense of evading arrest cannot be considered a mere contributing factor to Prater's death. *See Cyr*, 665 S.W.3d at 557–58. But for Thomas's hazardous driving, Prater would not have been shaken from the side of the U-Haul and swept under its rear axle. *See* TEX. PENAL CODE § 19.02(b)(3); § 6.04(a).

Thus, we conclude that a rational jury could have determined beyond a reasonable doubt that Thomas committed or attempted to commit the felony offense of evading arrest or detention in a motor vehicle, and while in furtherance of that

11

crime, she committed or attempted to commit an act clearly dangerous to human life that caused the death of Prater. *See id.* § 19.02(b)(3); *Robinson*, 466 S.W.3d at 173. We overrule Thomas's sole issue in cause number 01-21-00524-CR.

**Aggravated Assault with Deadly Weapon**

In her sole issue under appellate cause number 01-21-00523-CR, Thomas argues that the evidence was insufficient to support her conviction for the offense of aggravated assault with a deadly weapon. Specifically, she contends that the evidence was insufficient to demonstrate that she acted intentionally or knowingly in striking Officer Precour's vehicle with the U-Haul and to demonstrate that she used the U-Haul as a deadly weapon.

**A.    Relevant Law**

A person commits the offense of aggravated assault on a public servant by threat with a deadly weapon when a person "commits assault as defined by § 22.01"—i.e., intentionally or knowingly threatens imminent bodily injury to another—and the actor "uses or exhibits a deadly weapon during the commission of the assault" against "a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." TEX. PENAL CODE § 22.02(a)(2), (b)(2)(B); § 22.01(a)(2); s*ee Cuevas v. State*, 576 S.W.3d 398, 400 (Tex. Crim. App. 2019) (holding that peace officers discharge official duty anytime they enforce provisions of Texas code which they are bound by statute to enforce). "The actor is

presumed to have known the person assaulted was a public servant or a security officer if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant or status as a security officer." TEX. PENAL CODE § 22.02(c).

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). "Intent is almost always proven by circumstantial evidence." *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd); *see also Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) ("Direct evidence of the requisite intent is not required[.]"); *Smith v. State*, 56 S.W.3d 739, 745 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding that "[p]roof of a mental state, such as intent, must almost always be proved by circumstantial evidence and that jury may infer intent to kill from use of deadly weapon). "A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, the method of committing the crime, and from the nature of wounds inflicted on the victims." *Trevino*, 228 S.W.3d at 736.

A vehicle is considered a deadly weapon if used in a manner that may result in serious bodily injury or death to others. *See* TEX. PENAL CODE § 1.07(a)(17)(B); *see also Moore v. State*, 520 S.W.3d 906, 908–09 (Tex. Crim. App. 2017) (holding that vehicle is considered deadly weapon when driven in manner that can cause death; no intent to actually cause death or serious bodily injury need be shown). In determining whether a vehicle is a deadly weapon, the way it was used during the crime is assessed to see whether it could have caused death or serious bodily injury. *See Sierra v. State*, 280 S.W.3d 250, 255–56 (Tex. Crim. App. 2009) (holding that "dangerous and reckless driving and the violation of traffic laws" are determinative factors in deadly weapon finding). Mere existence of a "hypothetical potential for danger" is insufficient. *See Cates v. State*, 102 S.W.3d 735, 738–39 (Tex. Crim. App. 2003) (finding no deadly weapon in failure to stop and render aid, because no evidence of speeding, violating traffic laws, or endangering others while driving vehicle at time of or after offense).

At trial, the jury was instructed that it should find Thomas guilty if it found beyond a reasonable doubt that she intentionally or knowingly threatened Officer Precour with imminent bodily injury by using or exhibiting a deadly weapon—namely, the U-Haul truck—while she knew that Officer Precour was a public servant discharging an official duty.

**B.      Analysis**

Thomas challenges the sufficiency of evidence regarding (1) whether she intentionally or knowingly threatened Officer Precour with imminent bodily injury, and (2) whether she operated the U-Haul in a manner that a jury could reasonably conclude it was used as a deadly weapon.

The evidence was sufficient to show that Thomas intentionally or knowingly threatened Officer Precour with imminent bodily injury. Minutes after Thomas ran over and killed Prater, she lost control of the U-Haul in a residential neighborhood and crashed into a tree. With lights and sirens activated, Officers Precour and Daily attempted to block Thomas's path forward with their police vehicles. Officer Daily testified that the U-Haul "turned, veered away from the tree, and drove at [Officer Precour and Aber's] marked patrol unit." The officers described Thomas's actions as a deliberate ramming because she could have stopped after crashing into the tree, because alternate escape routes were available that would have avoided striking the patrol unit, and because she struck Officers Precour and Aber before they were able to enter the front lawn to block her forward path.

Thomas argues on appeal that Officer Precour's body camera footage shows him ramming the U-Haul. Officer Precour, however, testified that he tried to avoid contact with Thomas:

> I was actually trying to get away because when I drove up, we kind of started positioning on the side of the U-Haul. So the first car positioned

15

towards the rear of the U-Haul, the second car positioned kind of towards the middle of the U-Haul, and I came up front. And when I came up front, I was kind of coming to slow down to position for the felony stop. The U-Haul kept going, so I tried to speed up; and that's when the U-Haul rammed me.

The video footage from Officer Precour's body camera shows his vehicle driving along the side of the U-Haul before the U-Haul veered to the right and struck his patrol vehicle. To the extent there was any conflict in the evidence, it must be resolved in favor of the jury verdict. *See Curry*, 30 S.W.3d at 406. We defer to the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (reviewing court's role "is restricted to guarding against the rare occurrence when a fact finder does not act rationally").

We conclude that the evidence was sufficient to establish that Thomas acted intentionally or knowingly in threatening Officer Precour with imminent bodily injury. *See* TEX. PENAL CODE §§ 6.03(a)–(b), 22.01(a)(2).

Furthermore, the evidence is sufficient to show that Thomas used the U-Haul as a deadly weapon. Moments before striking the police unit with so much force that it was unable to continue in the chase, Thomas ran over and killed Prater. The jury could rely on the fact that Thomas used the U-Haul to cause Prater's death to infer her intent to use it as a deadly weapon against Officer Precour. *See Moore*, 520

S.W.3d at 908–09 (holding that vehicle is considered deadly weapon when driven in manner that can cause death). Additionally, recklessly evading police, committing countless traffic violations, nearly causing multiple accidents, crashing into a resident's front lawn, ramming a police unit, and injuring Officer Precour are factors demonstrating that the U-Haul was used as a deadly weapon. *See id.* at 913 (deadly weapon finding justified where defendant rear-ended vehicle parked at intersection resulting in minor injuries); *Sierra*, 280 S.W.3d at 255–56 (considering whether defendant's driving was "reckless" or "dangerous" in reviewing deadly-weapon finding).

We conclude that a rational jury could have determined beyond a reasonable doubt that Thomas used the U-Haul in a manner that may result in serious bodily injury or death to others. *See* TEX. PENAL CODE § 1.07(a)(17)(B); *Moore*, 520 S.W.3d at 908–09, 913.

We overrule Thomas's sole issue in appellate cause number 01-21-00523-CR.

**Conclusion**

We conclude that the evidence was sufficient to support both judgments of conviction. Accordingly, we affirm the trial court's judgments.

Richard Hightower
Justice

Panel consists of Justices Goodman, Hightower, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).

18